TRANSAMERICA INSURANCE GROUP,
Plaintiff-Appellee,

v.

Stephen George BEEM and wife, Joan
Beem, Defendants-Appellants.

TRANSAMERICA INSURANCE GROUP,
Plaintiff-Appellee,

v.

William Douglas BOOTH,
Defendant-Appellant.

Nos. 79–1370, 79–1371.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1981.

Decided July 1, 1981.

Dunlap Cannon, Jr., Kimbrough Gregory,
Memphis, Tenn., for defendants-appellants
in No. 79–1370.

Stephen G. Beem, Memphis, Tenn., for
defendant-appellant in No. 79–1371.

Robert F. Uhlman, Memphis, Tenn., for
plaintiff-appellee.

Before ENGEL and JONES, Circuit
Judges, and BERTELSMAN, District
Judge.*

BERTELSMAN, District Judge.

This is a declaratory judgment action by
an insurance company, which seeks to avoid

---

* Hon. William O. Bertelsman, Judge, United
States District Court for the Eastern District of
Kentucky, sitting by designation.

its obligation under a homeowner's policy to defend a serious personal injury action against its insured, because of the failure of the insured to give timely notice of the potential claim, as required by the policy.

The trial court granted summary judgment for the plaintiff insurance company. Although few facts are disputed, this court is of the opinion that the granting of the summary judgment must be reversed because the insurance company, as a matter of law, is estopped from disclaiming liability under the policy, in that it undertook to defend the action on behalf of its insured without securing a sufficiently comprehensive nonwaiver agreement.

On November 13, 1976, appellant Stephen G. Beem was involved in a hunting accident, in which the appellant William Douglas Booth sustained extremely serious injuries, which included the loss of sight in one eye and partial loss of sight in the other. In fact, Booth claims to have been rendered legally blind by the injuries sustained in the accident.

Beem, a young lawyer, had purchased a homeowner's policy, issued by the appellee Transamerica Insurance Group. The policy was on Beem's home, and his testimony is that he obtained it primarily for purposes of fire protection. There is no doubt that it also provided liability coverage for accidents of this kind, even though they occurred off of Beem's premises. Beem claims he was not aware of this latter coverage. Beem's homeowner's policy required that the insured give notice to the company, "as soon as practicable" of any event which might give rise to a covered liability claim against the insured.

Beem did not give notice to the insurance company of the hunting accident, until almost a year after the accident, although he was in constant communication with Booth and knew the extent of his injuries. On November 9, 1977, Booth's lawyer informed Beem of his intention to sue him. That same day, Beem had a discussion with one of the other lawyers in his firm from whom he found out for the first time that there might be coverage under the policy.

Promptly thereafter, Beem did notify his insurance agent of the accident and potential claim, and the agent verified that there was coverage.

On November 11, 1977, suit was instituted by Booth against Beem for damages arising out of the hunting accident. The personal injury action was filed in the circuit court of Shelby County, Tennessee, and in it Booth sought damages against Beem in the amount of $150,000. Beem duly forwarded the suit papers to the insurance agent.

On November 18, 1977, an adjuster met with Beem, took a statement from him, and at the same time obtained his signature on a printed form of non-waiver agreement. The terms of this agreement are critical to the outcome of this action, and we, therefore, quote it in full:

"IT IS HEREBY UNDERSTOOD AND AGREED by and between the parties signing this agreement, that any action taken by the hereinafter named Insurance Company or Companies in *investigating the cause of loss*, or *investigating* and ascertaining the amount of sound value, or the amount of loss and damage which occurred on 11–13–76 shall not waive or invalidate any of the terms or conditions of any policy or policies, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

"IT IS FURTHER UNDERSTOOD AND AGREED that neither the examination of the insured or of any other person, the examination of the books of account, bills, invoices, or other vouchers of the insured or any other person, the request of any other information, or the furnishing thereof, or the insuring of any trouble or expense by the insured shall waive or invalidate any of the terms and conditions of the policy or policies, or any defense thereunder.

"THE INTENT of this agreement is to preserve the rights of all parties hereto, and to permit an *investigation* of the cause of loss, the *investigation* and ascertainment of the amount of sound val-

ue, or the amount of loss and damage, or any of them without regard to the liability of the hereinafter named Insurance Company or Companies.

"WITNESS our hands in duplicate this 18th day of November, 1977." [1]

Thereafter, the insurance company conducted such an investigation of the accident as it thought proper and retained a law firm, which filed an answer in the state court case on December 8, 1977.

That law firm and the insurance company also took other measures to defend Beem in the state court action, including entering into serious settlement negotiations with Booth. According to Beem's testimony at the summary judgment hearing, he heard nothing further with regard to any reservation of rights or disclaimer under the policy by the insurance company, until it filed this declaratory judgment action in the United States District Court for the Western District of Tennessee on August 15, 1978. It is admitted that the insurance company did not make any other reservation of rights than that contained in the non-waiver agreement or give either Booth or Beem any indication it was still relying on the

defense of untimely notice until the filing of the federal declaratory judgment action.

The federal declaratory judgment action was set for trial on May 2, 1979. A motion for summary judgment was filed by the insurance company, which was set for hearing by the trial judge on the same day as the trial. At the hearing, the trial judge stated his opinion that the law of Tennessee was harsh in its requirement that an insured live up to his obligations to give notice as soon as practicable under his policy and that failure to read the policy and be familiar with its terms could, as a matter of law, not be accepted as an excuse.[2]

■ The plaintiff argued that, because he was so upset about the injury to his friend, he should be relieved of the obligation to inform himself of the contents of the insurance policy, until the state court action was filed against him. The trial court rejected this excuse, as a matter of law. Although the result is harsh and the rule applied seems to us unduly inflexible, we cannot say the trial court erred in holding that it reflects the law of Tennessee. But there is another issue, on the basis of which reversal is clearly required.[3]

1. Emphasis added. It seems to this court that this form is more suited to a claim under a casualty policy and may have been intended for use with such. In a liability situation insurance companies customarily use a much more comprehensive form of non-waiver agreement or reservation of rights letter. *See Hardware Mutual Casualty Co. v. Higgason*, 175 Tenn. 357, 134 S.W.2d 169 (1939).

2. *See Melton v. Republic Vanguard Ins. Co.*, 548 S.W.2d 313 (Tenn.App.1976).

3. The district judge's rulings on a matter of state law are entitled to respect by this court. *Randolf v. New England Mutual Life Ins. Co.*, 526 F.2d 1383 (6th Cir. 1975); *In re Winters*, 586 F.2d 1363 (10th Cir. 1978); *Lamb v. Amalgamated Labor Life Ins. Co.*, 602 F.2d 155 (8th Cir. 1979). With regard to the second issue herein, however, we think the weight of authority is sufficient to overcome this presumption.

It is certainly true, as pointed out in Judge Engel's thoughtful dissent, that a federal appellate court should not reverse a district judge who has reached a permissible conclusion on a question of state law. In this case, however, the record clearly shows that the trial judge did not have the benefit of briefs of counsel in

deciding the issue of the sufficiency of the non-waiver agreement. This issue was raised on the spur of the moment, although appellant sufficiently preserved his appeal on it. Therefore, the trial judge did not have the opportunity to consider the authorities cited in this opinion. A majority of this panel believes that the result reached herein would be reached by the Supreme Court of Tennessee, and it is certainly not our intention to substitute our policy views for those in which the state courts have the final word under the *Erie* Doctrine.

Although the Tennessee cases hold, as Judge Engel points out, that an insurer is not estopped from raising its defenses by participating in the litigation as long as the insured has actual notice of the reservation, the crux of the majority opinion herein is that the insured did not have actual notice of the reservation sought to be invoked by the company, because of the express statement in the non-waiver agreement that it was limited solely to investigation.

Also, it is clear that the result reached herein does not confer a "fortuitous advantage" upon the plaintiffs from the company's inadvertent use of an incorrect form. The company's estoppel is based on much more substantial considerations. Not only must the insured be pre-

After the trial court had stated its intention to grant the motion for summary judgment, counsel for Beem requested the court to hear testimony, as part of the summary judgment hearing, on the issue that the insurance company by defending Beem and negotiating with Booth for a period of some nine months, had exceeded its reservation of rights under the nonwaiver agreement, and thus had estopped itself to disclaim under the policy by the time it filed the federal declaratory judgment action. The trial judge heard such testimony, but granted the summary judgment motion in spite of it. In fairness, it must be pointed out that this issue was raised at the last moment and was not briefed to the trial court. Nevertheless, this court holds that the trial court committed an error of law in this last ruling. If the testimony at the trial confirms that of the summary judgment hearing, the insurance company must be held to have exceeded the terms of its non-waiver agreement, which was limited purely to investigation, by actively defending the state court action for a period of several months.

Counsel for all parties stated at the oral argument, and the court's own research confirms, that there are no Tennessee cases with regard to an insurance company's estopping itself from relying on a non-waiver agreement by exceeding its terms. Nevertheless, there is ample authority on the subject from other jurisdictions, and this court is of the opinion that the Tennessee courts would follow the majority and better reasoned precedents on the subject, which we find to be as follows.

■ The general rule may be said to be that, although an insured may have violated a term or condition of the policy, such as by failing to give timely notice, if the insurer

nevertheless assumes the defense, it will have waived the breach of the condition.[4]

■ If the insurer gives proper notice that it is reserving its rights, in spite of investigating the claim or defending any action which may arise from it, such investigation or defense will not waive its right to rely on the breach of condition. This notice is usually accomplished by a reservation of rights letter or a non-waiver agreement. However, the reservation of rights or non-waiver notice given by the insurance company "will be held sufficient only if it fairly informs the insured of the insurer's position."[5] Also, it is the law of Tennessee, as elsewhere, that documents prepared by the insurance company, which is in a better position than the insured to understand these matters, will be strictly construed against the company.[6]

■ With this background, it may be seen that the insurance company in this case gave its insured, Beem, notice only that it was reserving its rights during an *investigation* of the accident. This is all that the non-waiver agreement refers to. But the company went beyond investigation. It retained an attorney who filed an answer on behalf of the insured, and it entered into serious negotiations with the injured party. By taking these steps the insurance company waived its rights, or estopped itself from relying on its policy defense or the non-waiver agreement.

Directly in point is the case of *Columbia Casualty Company v. Ingram*.[7] There, as here, the insurance company reserved its right to "proceed with an investigation of the facts in the case," but went beyond its reservation of rights and entered the insured's appearance in a suit and took other

---

sumed to be prejudiced where the company enters into active negotiations with the claimant without the insured's having an opportunity to be represented by counsel, but the insured under the facts revealed by the uncontradicted record herein actually was prejudiced, because the case proceeded for nine months and substantial settlement offers were made without the insured's being notified to retain his own counsel.

4. Annotation, 38 A.L.R.2d 1148.

5. *Id.* at 1167.

6. *Interstate Life & Accident Insurance Co. v. Gann*, 196 Tenn. 422, 268 S.W.2d 336 (1954); *Pacific Mutual Life Insurance Co. v. Walt*, 198 Tenn. 59, 277 S.W.2d 434 (1955).

7. 154 Md. 360, 140 A. 601 (1928).

measures in the defense of the action.[8] The language of the court in *Ingram* is so pertinent to the instant case, that it bears quoting at length.

"While the insurer was entitled to prompt notice of the accident and of the ensuing claim of damages, *the assured had the right to be informed within a reasonable time, after the reservation of July 18th, as to whether the insurer intended to accept or disavow the duty of resisting or adjusting the claim.* The record shows no reason why a sufficient investigation of the facts could not have been made before the entry of an appearance for the defendant, and the filing of pleas, in the suit against the assured, became necessary. It does not appear that there were any conditions which prevented the insurer from deciding at a much earlier date than September 9th whether it would perform the obligations imposed upon it by the contract of insurance. *If prejudice could result to the insurer from a delay of ten days in the receipt of notice of the accident, it is readily conceivable that the interests of the assured might be prejudiced by the insurer's delay for more than a month and a half in determining upon, and declaring, its attitude in regard to the question of its liability.* The reservation in the letter of July 18th was made specifically for the purpose of permitting an 'investigation' by the insurer without a waiver of its rights under the policy ... *But it was not stated in the letter that the assumption by the insurer of full and sole control of the suit brought against the assured would not operate as a waiver of the insurer's right to disclaim liability on the ground of delay in the notification* for which the policy provided. The effect, upon the waiver issue, of the insurer's conduct in taking, and so long retaining, charge of the suit, must be considered without reference to the reservation in the letter, *because it was not the kind of conduct which the letter specified.* Consequently, the primary question is reduced to the simple inquiry whether the control which the insurer assumed, and retained for the period mentioned, over the suit against the insured, must be judicially declared to be insufficient to support the theory of waiver upon which the assured relies." [9]

This court adopts the rationale of the Maryland court and believes that the Supreme Court of Tennessee would do so as well. Other cases, not quite as close on the facts but adopting the same approach, are set forth in the margin.[10]

Therefore, the granting of the summary judgment by the trial court must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

ENGEL, Circuit Judge, dissenting.

I respectfully dissent. Whatever may be the law of other jurisdictions, I am unpersuaded that the insurance company is estopped from asserting its defense based on the effect of lack of notice under Tennessee law. Since there are no state decisions dealing with the subject, it is our duty to decide what rule the Supreme Court of Tennessee would reach if faced with the issue. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 54 S.Ct. 817, 82 L.Ed. 188 (1938), and its progeny, we cannot simply

---

8. Cf. *Beam v. State Farm Mutual Insurance Company*, 269 F.2d 151 (6th Cir. 1959) (cooperation clause).

9. 140 A. at 602 (emphasis added).

10. *Claverie v. American Casualty Co.*, 76 F.2d 570 (4th Cir. 1935) (prejudice to insured results from company's assuming defense); *Tiedtke v. Fidelity & Casualty Co. of New York*, 222 So.2d 206 (Fla.1969) (company estopped if proceeds to defend without informing insured it is standing on reservation of rights); *Henry v. Johnson*, 191 Kan. 369, 381 P.2d 538 (1963) (non-waiver agreement to be strictly construed); *American Casualty Co. v. Shely*, 314 Ky. 80, 234 S.W.2d 303 (1950) (insurer estopped by assuming defense for a year without reservation of rights); *Hardware Mutual Casualty Co. v. Higgason*, 175 Tenn. 357, 134 S.W.2d 169 (1939) (example of nonwaiver agreement comprehensive enough to include defense). *See also* 44 Am. Jur.2d §§ 1507–1522; Couch, Insurance 2d §§ 49.769, 51.77, and § 51.83.

substitute the majority rule or what we consider to be the more desirable law. Moreover, our circuit has consistently followed the rule in diversity cases that if state law is uncertain and a federal district judge has reached a permissible conclusion upon a question of state law, the appellate court should not reverse even if it thinks the rule should be otherwise. *Rudd-Melikian, Inc. v. Merritt*, 282 F.2d 924, 929 (6th Cir. 1960); *Lee Shops, Inc. v. Schatten-Cypress Co.*, 350 F.2d 12, 17 (6th Cir. 1965), *cert. denied*, 382 U.S. 980, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966); *Insurance Company of North America v. Federated Mutual Insurance Co.*, 518 F.2d 101, 106 (6th Cir. 1975). *See also Lenoir v. Porters Creek Watershed District*, 586 F.2d 1081, 1093 (6th Cir. 1978).

Beem accidentally shot Booth during a hunting expedition causing admittedly grievous injuries. Unaware that his homeowner's policy covered the accident, Beem did not notify the insurer as required by the policy until nearly one year after the event. The majority correctly concludes that under applicable Tennessee law, *Melton v. Republic Vanguard Insurance Co.*, 548 S.W.2d 313 (Tenn.App.1976), the insured's ignorance of the coverage of his homeowner's policy is insufficient to excuse his failure to give notice "as soon as practicable." [1] The majority incorrectly concludes, however, that the insurer is estopped under Tennessee law from asserting its defense based on lack of notice because it undertook the defense of a state court tort action arising from the accident. In disagreeing with the judgment of the district court, the majority fails to apply Tennessee authority to the undisputed facts surrounding the execution of the non-waiver agreement signed by Beem.

In *Hardware Mutual Casualty Co. v. Higgason*, 175 Tenn. 357, 134 S.W.2d 169 (1939), the Tennessee Supreme Court upheld the validity of a non-waiver agreement which included both the investigation and the defense of a lawsuit by the insurer. The plaintiff, in seeking to avoid application of the non-waiver agreement, charged that its specific language incorrectly described the type of vehicle as a Pontiac instead of a Nash. The court observed that an insurer is not estopped from raising its defenses by participating in litigation so long as the insured has actual notice of the reservation. The court stated:

> [T]he recitals of the instrument fixing the date of the accident as that of November 15, 1928, as well as recitals of the stipulation of fact, clearly show that the intention of the parties was to relate the agreement to this accident and the litigation growing out of it. There can be no doubt about this. *The agreement must be construed as a whole and in the light of the circumstances surrounding its execution.*

134 S.W.2d at 177 (emphasis added). It is true that the non-waiver agreement in the present case fails to contain language reciting that the company was not waiving its defenses when it entered an appearance in the tort litigation; the agreement refers to non-waiver of the insurer's defenses during the investigation. Nonetheless, the circumstances here lead unerringly to the conclusion that the insurance company reserved its rights to resist liability for payment under the policy while undertaking the investigation and entering an appearance on behalf of Beem.

The hunting accident occurred on November 13, 1976. The first notice to the insurer of the accident, and accordingly of its potential liability under the policy, came on November 10, 1977, when Beem reported the accident to the insurance company. Transamerica's Memphis claim office received notice on November 14, three days

---

1. The Tennessee Supreme Court has consistently adhered to the principle that notice is a condition precedent to an insurer's obligation under an insurance policy. *See Phoenix Cotton Oil Co. v. Royalty Indemnity Co.*, 140 Tenn. 438, 205 S.W. 128 (1918); *Hartford Accident and Indemnity Co. v. Creasy*, 530 S.W.2d 778 (Tenn.1975). The policy in question expressly provides that "no action shall lie against this Company unless, as a condition precedent thereto, the Insured have fully complied with all the terms of this policy...." It should be noted that ignorance of the notice provision does not provide an excuse for failure to give notice. *Fisher v. Mutual of Omaha Insurance Co.*, 503 S.W.2d 191 (Tenn.1973).

after suit was filed. The insurer obviously did not have the opportunity to complete an adequate investigation before entering an appearance. Both parties were aware of this circumstance when they executed the non-waiver agreement on November 18, 1977. This factor was considered important by the Tennessee district judge in assessing whether the insurance company was estopped to deny liability:

> We simply do not think so. In fact, we think that the insurance company did the sensible, logical, reasonable thing. If they had, without having any court determination as to their liability simply failed and refused to defend and had allowed a default judgment or some other prejudicial action to have taken place, then they may have been liable for allowing something to be, something to the prejudice of Mr. Beem . . . .

The insured was protected from immediate danger of default by the answer filed on his behalf by the insurer. This answer contained general denials of the allegations in the complaint except for the occurrence of the accident; it was obviously prepared to avoid default while the insurance company completed an investigation. Thus, Beem must have understood that the investigation mentioned in the non-waiver agreement was incomplete when the insurance company filed an answer.

The majority is probably correct in its observation that the particular form of non-waiver agreement is "more suited to a claim under a casualty policy, and may have been intended for use with such." This argument implies that the more comprehensive type of non-waiver agreement which appears in *Hardware Mutual Casualty Co. v. Higgason, supra,* would normally have been used. This suggests a fortuitous advantage conferred upon the plaintiff by the use of an incorrect form. It infers that the insurance company intended more comprehensive language than was actually used. Construing the agreement in light of the

surrounding circumstances, this observation by the majority supports an interpretation that the insurance company is not estopped from asserting the defense based on failure to receive timely notice.

The majority opinion ignores the reason for an estoppel. An insurer is estopped from denying liability once it has undertaken the defense of an insured because its conduct has prejudiced the right of the insured to defend himself. Thus it is stated in 14 *Couch on Insurance* 2d § 51:93 (1965) (footnotes omitted): [2]

> In order to protect the insured from the improper withdrawal from the defense by the insurer, it has been held that if such conduct of the insurer causes prejudice to the insured, the insurer is thereafter estopped to deny liability under the policy, but it is not estopped to do so if its action does not result in any prejudice to the insured.

Beem has suffered no prejudice because of the actions taken on his behalf by the insurance company. On the contrary, if an answer had not been filed, there could have been a default judgment requiring satisfaction out of Beem's personal estate. Moreover, there has been no showing that the passage of time caused any prejudice or that the insurer acted adversely to Beem's interests. Most importantly, Beem was not led to take a course of action adverse to his own personal interests. Once more the Tennessee district court judge recognized this fact in ruling from the bench:

> [W]e are not happy that an insurance company under these circumstances seems to get off the hook with persons that are involved in a bad and unfortunate situation, but we do not find under these circumstances and conditions that the insurance company had taken action to the detriment and to the prejudice of the plaintiff or would have changed the posture or position of Mr. Beem, that Mr. Beem is still, is a defendant in a case that is pending, he has the benefit of whatev-

---

**2.** Prejudice is one of the elements required for an estoppel under Tennessee law. *See, e. g., Provident Washington Insurance Co. v. Reese,*

213 Tenn. 355, 373 S.W.2d 613, 615 (1963), and cases cited therein.

er actions have been taken by the insurance company on his behalf, if there had been depositions or other things, of course, the insurance company is not entitled to get back anything that they may have done up to this point. We do not feel that it changes the position of Mr. Booth as a claimant, as a plaintiff in the state courts against Mr. Beem as a defendant. It is simply holding, unhappily that Mr. Beem is not entitled to the benefits of liability coverage under the circumstances and that the insurance company under the circumstances adduced is not estopped or precluded from raising the defense and presenting, as they have before this court, that question.

As tempting as it might be to agree with the majority on the substantive merits of the appeal, I regretfully conclude that it has strayed beyond a federal court's discretion in a diversity case. The circumstances here were such that Beem had to understand that the insurance company was not waiving its defense. Furthermore, he was not prejudiced by the delay which preceded the initiation of this action. The district court's interpretation of Tennessee law is not shown to be in error. Accordingly, I would affirm the judgment of the district court.