**FORUM INSURANCE COMPANY, Plaintiff,**

v.

**AVIATION ENTERPRISES, INC.; the United States and the United States Department of Defense; and Jeremy Hew Phillips, Individually and on behalf of certain underwriters at Lloyd's, London and Companies, Defendants.**

**No. 84–3032–4B.**

United States District Court, W.D. Tennessee, W.D.

March 15, 1988.

Joseph W. Barnwell, Memphis, Tenn., James F. Murphy, Chicago, Ill., for plaintiff.

Paul A. Warner, Fisher & Hurst, San Francisco, Cal., Timothy A. Ryan, III, Memphis, Tenn., for Phillips.

Robert M. Williams, Jr., Asst. U.S. Atty., Memphis, Tenn., Thomas B. Almy, Trial Atty., Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Ralph May, Office of Counsel, U.S. Defense Depot, Memphis, DDMTG, Memphis, Tenn., for U.S. and U.S. Dept. of Defense.

Joel Porter, Memphis, Tenn., for Aviation Enterprises, Inc.

## ORDER ON PENDING MOTIONS

McRAE, Senior District Judge.

Plaintiff Forum Insurance Company ("Forum") brought this declaratory judgment action seeking a determination of its liability under a contract of insurance. The suit arises from the August 11, 1984 crash of an aircraft insured by Forum and operated by defendant Aviation Enterprises, Inc. ("Aviation Enterprises"). Shortly after its takeoff, the aircraft lost power in one of its engines and struck a warehouse at the United States Department of Defense depot in Memphis. Plaintiff Forum asserts that because of an exclusion contained in the insurance contract, it is not liable for any damage to property owned by defendants United States and the United States Department of Defense. Forum also contends that the policy provides no coverage for the aircraft's cargo, which was owned by Hughes Aircraft Company and insured by defendant Jeremy Hew Phillips and other underwriters at Lloyd's, London and Companies.

In its Order on Pending Motions dated September 15, 1987, the Court granted defendant United States' Motion for Summary Judgment, finding the policy exclusion relied upon by Forum inapplicable to that defendant's damages claim. Forum is now before the Court on its Motion to Reconsider or, Alternatively, for Rule 54(b) Certification for immediate appeal. Defendant United States has submitted a response and that motion is ripe for decision. Plaintiff has also filed an Amended Motion for Partial Summary Judgment with respect to its potential liability to defendant Phillips for the value of the aircraft's cargo. A response to this motion has also been submitted, and it is likewise ripe for consideration. The Court will address each motion in turn.

### Motion to Reconsider or, Alternatively for Rule 54(b) Certification

On September 15, 1987, the Court ruled that a coverage exclusion contained in the insurance contract was inapplicable, and thus ineffective, to bar Forum's liability for the property damage sustained by defendant United States. The exclusion at issue states:

> Unless otherwise provided in the policy of insurance, the liability insurance afforded under this policy shall not apply to: ... (m) *Any loss* arising from operations with aircraft which, at takeoff, have not had inspections, maintenance, preventive maintenance, and alterations performed when required by the Federal Aviation Regulations....

(Emphasis added). Forum contends that there is an issue of fact as to whether required inspections and maintenance took place. Forum contends further that the word "loss" as it is used in the contract is ambiguous and that based upon *its* interpretation of the agreement, "loss" should be construed broadly so as to potentially eliminate its liability for damage to property on the ground which was struck by the aircraft.

As the Court noted in its earlier ruling, however, the contract gives the term "loss" a clear and unambiguous meaning. In the policy section entitled "Definitions Applicable to All Policy Sections," it provides: " 'Physical Damage' means direct and accidential *loss of or damage to the Insured Aircraft, hereinafter called loss,* but does not include loss, of use or reduction in value, if any, after repairs have been made" (emphasis added). Thus, in nearly as unmistakable a manner as can be expressed, the contract states that where the word "loss" is used within its four corners, the reference is to "damage to the Insured Aircraft."

Plaintiff argues "[i]t is clear that physical damage to aircraft is one type of loss, but nowhere does the policy say that loss *only* applies to physical damage to the insured's aircraft." Memorandum in Support of Plaintiff's Motion to Reconsider at 2. That is so as far as it goes; however, nowhere else in the definitional section does the policy say or even suggest that other kinds of damage will be referred to as "loss." Neither the definition of "Property Damage" nor the definition of "Bodily Injury" contain the phrase "hereinafter called loss." Despite this, plaintiff argues that unless the phrase "hereinafter called loss" is stated in a form which would make it not only unnatural and unreasonable, but impossible, to understand it in any other way, it is ambiguous. This argument asks the Court to find an ambiguity where none exists. The phrase at issue is clear, neither the paragraph in which it is found nor the other definitional provisions state or suggest in any way that it should be construed other than in the manner in which such phrases are typically understood. The contract provides, and does not intimate otherwise, that "loss" refers exclusively to physical damage to the insured aircraft.

In any event, the rule is well established that ambiguity in an insurance policy must be construed against the insurer. *Palmer v. State Farm Mutual Automobile Insurance Company,* 614 S.W.2d 788, 789 (Tenn. 1981); *see also, Transamerica Insurance Group v. Beem,* 652 F.2d 663, 666 (6th Cir.1981). Plaintiff asserts that this rule should not be applied here because it did not draft the exclusion at issue. Plaintiff points out that the form of Standard Endorsement 5, which contains the exclusion, was dictated by the Civil Aeronautics Board ("CAB"). Plaintiff, however, *did* draft the definitional section at issue, and to the extent that existing policy definitions limited the scope of the exclusions more than CAB regulations required, plaintiff was free to modify the definitions' content to reflect what it felt was intended and permissible.

Where an alleged ambiguity exists only because of the draftsmanship of the insurer, the mere fact that the plain and ordinary meaning of a portion of the policy not drafted by the insurer might be altered by portions of the policy which *were* drafted by it does not provide a basis for the Court to refuse to apply the usual rule regarding the interpretation of ambiguous language. Accordingly, even if the Court were to find ambiguity, it would have to resolve any such ambiguity in favor of coverage.

Plaintiff makes the further argument that the introductory phrase preceding the delineation of the specific exclusions heightens any ambiguity involving the meaning of the term "loss." That phrase, quoted above, states: "Unless otherwise provided in the policy of insurance, the *liability insurance* afforded under the policy shall not apply to: ..." (emphasis added). Plaintiff focuses on the word "liability" and urges that the "usual interpretation of 'liability insurance' refers to third-party, not the insured's, claims," and that, therefore, to rely on a definition of loss which refers only to the insured's claims would render the introductory phrase nonsensical. Thus, based upon this alleged "usual interpretation," plaintiff asserts that the Court should refuse to apply the "technical" meaning it assigned to the word "loss" earlier in the contract.

First, it should be noted that simply because a phrase is alleged to have a usual definition, a Court is not bound to apply that definition in construing a contract which uses other terms whose *contractually-established* meanings would be rendered

absurd or meaningless if that phrase's alleged usual definition were relied upon. Secondly, where an insurer seeks to impose upon a word with an established ordinary definition (e.g., "loss") a meaning which is of a more limited or unusual nature, it must bear the burden of any resulting confusion. *See State Farm Mutual Automobile Insurance Company v. Oliver,* 406 F.2d 409, 410 (6th Cir.1969). Thus, even if the allegedly commonly understood use of "liability insurance" would yield an apparent inconsistency given the meaning here ascribed to the term "loss," where, as here, that phrase is not itself defined within the four corners of the contract and the term which allegedly gives rise to the inference of inconsistency *is,* the meaning given the latter term by the contract must be recognized as predominant. Notwithstanding plaintiff's leap from the conclusion that "liability insurance" has a certain usual meaning to the conclusion that that meaning must be used in construing the language of this contract; where it, as an insurer, has given a specific meaning to the term "loss," it will be held to that meaning.

Although it is not essential because of the construction given exclusion (m), a brief discussion of a peripheral point is included because it was mentioned in the September 15, 1987 order. As the Court indicated, 14 C.F.R. § 298.43(b), which has been in effect continuously since it was reissued on September 17, 1985, states: "The liability of the insurer shall not be subject to any exclusion by virtue of violations, by the insured operator, of any applicable safety or economic rule [or] regulation ... prescribed ... by the Federal Aviation Administration or the Civil Aeronautics Board...." That provision is accompanied by the following apparently inconsistent authorized exclusion of liability:

> [N]o policy ... of insurance required by this part shall contain any exclusion other than the following authorized exclusions:
>
> .  .  .  .  .
>
> (1) Any loss arising from operations with aircraft which, at takeoff, have not had inspections, maintenance, ... and alterations performed when required by the Federal Aviation Regulations....

14 C.F.R. § 198.44(1). Because the contract's provisions are, in part, based on the above-quoted regulations, they are also inconsistent. The contract, however, contains language not present in the regulations which makes reconciliation of the apparent conflict a simple matter.

The contract expressly states that the liability exclusions are ineffective to the extent that they conflict with any other of the policy's provisions. Thus, even if exclusion (m) was construed in the manner plaintiff wishes, it would be rendered ineffective by paragraph 3 of Standard Endorsement 5, which states:

> The Insurer further agrees that, within the limits of liability .. specified in the policy, no term ... or other provision contained in the policy ..., except the EXCLUSIONS contained in this endorsement, shall relieve the Insurer of liability with respect to such bodily injury or property damage. *In this connection, the Insurer expressly agrees that no violation by the Named Insured of any ... legally imposed requirement of the Federal Aviation Administration or the Civil Aeronautics Board ... shall affect the insurance afforded under this policy.*

(Emphasis added).

Plaintiff contends that because the first sentence in the quoted paragraph excepts the liability exclusions from its operation, a similar qualification should be "read into" the second sentence. The second sentence itself, however, contains no such limitation and is on its face an absolute statement. To accept plaintiff's contention, therefore, it would be necessary for the Court to interpose language the parties have not included in the contract. Contrary to plaintiff's assertion, the mere use of the transitional phrase "[i]n this connection" does not provide a sound basis for incorporating into the plain, unequivocal language of a sentence a significant limitation contained in a preceding sentence.

In summary, the Court reaffirms the conclusion it expressed in its September 15, 1987 Order on Pending Motions: "As used in the contract, 'loss' refers to [injury to] the insured aircraft, not the liability arising

from damages sustained by [third parties]." The Court also notes that even had exclusion (m) been construed in the manner plaintiff contends is appropriate, it would have been rendered ineffective by paragraph 3 of the contract's Standard Endorsement. The Court therefore denies plaintiff's Motion to Reconsider.

■ Plaintiff has also moved for Rule 54(b) certification for immediate appeal of the order which granted summary judgment in favor of the United States and the United States Department of Defense. Defendants do not oppose plaintiff's motion and themselves contend that certification is appropriate.

Rule 54(b) permits the Court to direct the entry of a final judgment as to fewer than all of the parties to an action "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The Sixth Circuit has taken the position that Rule 54(b) certification is reserved for those "infrequent harsh case[s]" in which a party would suffer hardship if the right to appeal were deferred pending resolution of the entire controversy on the merits. *Rudd Construction Equipment Company, Inc. v. Home Insurance Company,* 711 F.2d 54, 56 (6th Cir.1983).

Plaintiff has submitted no grounds in support of its motion from which it might be concluded that some "hardship" will be produced by requiring plaintiff to pursue its appellate remedies in the usual manner. Accordingly, the Court denies plaintiff's Motion for Rule 54(b) Certification of the September 15, 1987 Order on Pending Motions.

### Plaintiff's Amended Motion for Partial Summary Judgment

■ Plaintiff Forum has moved for summary judgment on the issue of whether it is liable under the insurance contract for the value of the aircraft's cargo, which was owned by Hughes Aircraft Company and insured by defendant Phillips and other underwriters at Lloyd's, London and Companies. Plaintiff contends that insurance for cargo was not purchased by Aviation Enterprises. Defendant Phillips responds that the contract is ambiguous and that, consequently, summary judgment would be inappropriate.

The insurance contract provides that "the liability insurance afforded under this policy shall not apply to: ... (e) Loss of or damage to property ... in the care, custody or control of the Named Insured, or *carried in or on any aircraft with respect to which the insurance afforded by this policy applies;* ..." (emphasis added). The meaning of this provision is clear and unmistakable. Even if, as defendant Phillips contends, the phrase "care, custody or control" is ambiguous, the phrase "property ... carried in or on [the aircraft]" is *not.* As there is no genuine issue of material fact on this issue and as plaintiff is entitled to judgment as a matter of law, the Court grants plaintiff's Amended Motion for Partial Summary Judgment.

### Conclusion

Plaintiff's Motion to Reconsider or, Alternatively, for Rule 54(b) Certification of the September 15, 1987 Order on Pending Motions is denied in all respects.

Plaintiff's Amended Motion for Partial Summary Judgment with respect to Count II of its Second Amended Complaint is granted. The Court concludes that the policy of insurance issued by plaintiff Forum Insurance Company and numbered C–0153–1113 does not cover, apply to, or protect the cargo damaged in the August 11, 1984 crash of the Douglas DC–3 aircraft No. N70003 which was operated by defendant Aviation Enterprises, Inc. The above-described policy of insurance therefore creates no rights in favor of defendant Jeremy Hew Phillips, individually or on behalf of certain underwriters at Lloyd's, London and Companies. Accordingly, the Clerk is directed to enter a final judgment incorporating the above-described declaratory judgment in favor of plaintiff and against defendant Jeremy Hew Phillips.

IT IS SO ORDERED.