**RICHARDS MANUFACTURING CO.,**
**Plaintiff–Appellee,**

v.

**GREAT AMERICAN INSURANCE CO.,**
**Defendant–Appellant.**

Court of Appeals of Tennessee,
Western Section.

Dec. 21, 1988.

Application for Permission to Appeal
Denied by Supreme Court
March 27, 1989.

Court. Rather than to again set forth all the facts and proceedings already had to this point, we attach a copy of our first opinion as Appendix A. The prior opinion sets out in detail the prior proceedings and our conclusions. Additionally, since this is a continuation of the same case, a proper understanding of our present disposition of the case requires a familiarity with proceedings. Our previous opinion was cogent and written with an economy of verbiage. No review of our first holding was sought in the Supreme Court. Hence, it is unreported. Therefore, either we must under the guise of paraphrasing, restate it without the benefit of quotation marks, or simply attach same and make it a part hereof. We have chosen the latter method, for that opinion is now the law of this case.

In its previous opinion, this Court concluded that a decision regarding summary judgment would not be made until there was an initial determination by the trial court of whether or not the event for which indemnity is sought was an "occurrence" within the meaning of the policy. Accordingly, the case was remanded. However, on remand, the plaintiff insisted that the defendant was estopped to deny that the event was an occurrence because the insurer had not defended the case under a reservation of rights specifically reserving therein the issue of whether or not the event was an occurrence under the policy. Also on remand, the defendant sought and was granted additional time to present proof, but failed to do so within the time prescribed and sought additional time.

The trial judge denied the defendant insurer a second additional time requested and failed to address the issue of whether or not the event was an occurrence within the meaning of the policy. The trial judge was of the opinion that the defendant insurer was estopped to deny that the event was an occurrence. If true, the trial judge was correct in not addressing the issue of occurrence.

The controlling question on appeal is whether the trial judge was correct in his

John W. Leach, Wilson, McRae, Ivy, Sevier, McTyier and Strain, Memphis, for defendant-appellant.

Carl H. Langschmidt, Jr., Michael F. Rafferty, Boone, Wellford, Clark, Langschmidt and Appearson, Memphis, for plaintiff-appellee.

NEARN, Judge (Retired).

This is the second time this summary judgment matter has appeared in this

holding regarding the application of the doctrine of estoppel. However, the doctrine of estoppel like any other legal doctrine, does not operate in a vacuum. It operates in relationship to certain written or oral words, or to the or inaction of another when the duty was present to act or speak. In this instance, we deal with the doctrine in relationship to a "reservation of rights" agreement and have that to consider along with the doctrine.

There are three generally recognized kinds of estoppel, viz: by record, by deed, and by matter in pais. *Duke v. Hopper*, 486 S.W.2d 744 (Tenn.App.1972). Estoppel by record is generally considered to be that form created by solemn statements made in judicial proceedings and may be collaterally applied. The genesis of estoppel by deed is found in statements made in recorded instruments conveying title or interests in property. Estoppel by matter in pais is that form found where a party has acted to his or her detriment based on oral or written statements, or, the silence or inaction of another, where the duty was present to act or speak. In this case we do not consider estoppel by deed.

▮ In regard to affording a defense while reserving the right to litigate coverage under a liability policy, the general law is that an insurer, questioning its liability under the policy but willing to afford the insured a defense in the tort litigation, in order to preserve the right to later litigate coverage, must advise the insured that it will represent the insured, but that it intends to reserve the right to litigate the issue of policy coverage of the insured should there be an adverse judgment in the tort action. See *Hardware Mutual Casualty Co. v. Higgason*, 175 Tenn. 357, 134 S.W.2d 169 (1939); *Maryland Casualty Co. v. Gordon*, 52 Tenn.App. 1, 371 S.W.2d 460 (1963); also, *Transamerica Ins. Co. v. Beem*, 652 F.2d 663 (6th Cir.1981) (construing Tennessee law).

As to the facts of this matter, it is undisputed that after the California tort case was filed in July, 1978 questions arose between and among the insurance carriers, Aetna and Great American, and the plaintiff regarding coverage and representation. In September, 1979, before the tort case was tried, the defendant wrote a letter to the plaintiff which in pertinent part provided:

> The policies of insurance issued to your company by Great American would not provide coverage for any Award of punitive or exemplary damages. Therefore, any participation by Great American in this matter is undertaken with the express understanding that Great American will not be responsible for any Award of exemplary or punitive damages which might be rendered in this matter.
>
> . . . .
>
> The purpose of this letter therefore, is to confirm that this company will undertake the defense of this matter on a 50–50 basis with the Aetna Casualty & Surety Company, however we will not be responsible for any Award of punitive or exemplary damages.

Accordingly, it is indisputable that early on in the tort litigation, the defendant advised the plaintiff and the plaintiff knew that defendant's position was that it would afford plaintiff counsel in the tort litigation but that it was not obligated to pay any award of punitive damages under the policy.

It is just as indisputable that at all times during the trial of the California case, when representing the insured against the claim made by the injured party, the insurer took the position with its insured that it was liable to the insured for any compensatory damages awarded against the insured up to the policy limits. In its initial answer to this declaratory judgment action now before us, the insurer admitted liability for the $25,000.00 compensatory judgment award. It was not until after the California Court of Appeals affirmed the judgment of the California trial court that the defendant insurer sought to amend its answer in this cause to deny *any* liability under the policy.

In order to sustain the action of the trial judge in this matter, counsel for plaintiff insists that since the insurer in its agreement to represent plaintiff made no mention that it was of the opinion that an occurrence, as defined by the policy, never existed, such defense could not be raised in this declaratory judgment action, and, since the insurer had admitted liability as to compensatory damages, it must be concluded that the insurer is estopped to deny full liability for the full judgment rendered in California because (a) when it failed to reserve the right to litigate the specific issue of "occurrence" it thereby waived same and by its actions is estopped to say otherwise; and (b) by admitting liability for compensatory damages it, of logical necessity, admitted that there had been an "occurrence" under the policy and may not now change that position.

It appears to be the argument of counsel for appellant that the facts will not support a conclusion of estoppel and even if it did, such conclusion would be the creation of insurance or the extension of same beyond policy terms by the doctrine of estoppel which creation or extension by estoppel is contrary to our laws.

To resolve this matter we must decide whether or not the notice given by the insurer to the insured is sufficient or proper notice to constitute a non-waiver agreement or a reservation of rights agreement and if it is, does such agreement prevent the insurer from raising the policy definition of "occurrence" as a defense to its liability in this declaratory judgment action.

■ As noted in *Transamerica Insurance Group v. Beem*, 652 F.2d 663 (6th Cir.1981) (construing Tennessee law), if the insurer gives proper notice of a reservation of rights it will not waive its rights to rely on a breach of condition. Further, such notice will be held sufficient only if it fairly informs the insured of the insurer's position. We think it beyond doubt that the insurer in this case fairly advised the insured of its position regarding punitive damages. However, what the notice did not do was advise the insured of the proper legal reasons for that position. We hold that it is not required that the reason given for the insurer's position be legally correct. The position taken may be correct, but for other legal reasons. It is the insurer's conclusion regarding the existence or nonexistence of certain coverage that must be clearly and fairly communicated to the insured, not its legal reasons therefor. Therefore, we hold that the insurer is not estopped to litigate the issue of its policy liability for the punitive damage award.

■ As to the matter of compensatory damages, we hold that the insurer is estopped to contest its liability for that portion of the California judgment representing such award. There was a total failure on the part of the insurer to reserve any question regarding compensatory damage award. In fact, not only did it not reserve, but it expressly advised the insured that it had concluded that it was liable for the compensatory damage award. As previously pointed out, it was only after the insurer defended the California suit and after it had filed its first answer in this cause that it sought to contest liability for the compensatory damages awarded. If there is any state that countenances such an ex post facto creation of a right reserved, so be it, but we hold that Tennessee does not allow it. Our holding on this matter does not create coverage by estoppel. In effect, we have found as a matter of fact, that the insurer, subsequent to the issuance of the policy, entered into a binding agreement with the insured that it would pay the compensatory damage award and defend the case with the understanding that it intended to later litigate the matter of punitive damages if awarded. Whether the insurer is liable under the policy for compensatory damages is now entirely immaterial. The insurer has agreed to pay it by separate agreement from the policy. What the insurer separately agreed to with the insured is as plain as the nose on Cyrano's face and it's just as plain that the insurer is estopped to

deny it. The recognition of a subsequent agreement for what it is, is not the creation of coverage by estoppel. The obligation to pay is created by the agreement, if not already present under the policy.

■ We are now back to where we were when we first considered this case. We noted then that before liability under the policy could be decided there had to be first determined whether an "occurrence," as defined by the policy, existed. We further noted that this Court is not one of original jurisdiction, but one of appellate jurisdiction whose primary function is to review the decisions of lower courts. We remanded so the lower court could first make the necessary determination, with the observation that "[t]he issue before the court is whether there was an accident either expected or intended from the standpoint of Richards. The tort litigation involved the issue of express or implied malice, which would not necessarily involve expectation or intention on the part of Richards." We again remand for the same purpose.

The result is that so much of the order of the trial judge that in effect holds that the defendant is estopped to litigate the issue of "occurrence" under the policy provisions in regard to the jury award of punitive damages is reversed. So much of that order which in effect holds that the insured may not contest under policy terms the payment of the jury award for compensatory damages is affirmed.

We further observe that if there was an occurrence as defined in the policy, the insurer is liable, under the policy, for the punitive damages awarded in the California case; if not, it is not. In no event may the insurer escape liability for the $25,000.00 awarded as compensatory damages.

Since we remand for further proceedings, we see no reason to address the matter of the trial court's refusal to grant an extension of time to present additional proof.

Costs of this appeal are taxed equally between the parties, for which execution may issue if necessary. Costs below are to await the final judgment of the trial court.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.

## APPENDIX

In the Court of Appeals of Tennessee

Western Section at Jackson

Filed Nov. 14, 1986

CRAWFORD, Judge.

Defendant, Great American Insurance Company, appeals from the order of the trial court granting summary judgment to plaintiff, Richards Manufacturing Company.

Richards' complaint, filed July 30, 1981, alleges that the parties entered into a comprehensive liability insurance policy contract whereby Great American insured Richards for various liability exposures. The insurance contract provided in part pertinent to this case as follows:

[Great American Insurance Company] agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## INSURING AGREEMENTS

\* \* \* \* \* \*

Coverage B—Bodily Injury Liability— Except Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence.

\* \* \* \* \* \*

II Defense, Settlement. The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury

or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

\* \* \* \* \* \*

### CONDITIONS

\* \* \* \* \* \*

15. Definitions.

\* \* \* \* \* \*

(b) "Bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

\* \* \* \* \* \*

(g) "Occurrence" means an accident, including continuous or repeated exposure to conditions which results during the policy period in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

The complaint alleges that a Nellie Fossler sued Richards in California claiming bodily injuries as a result of an implant of one of Richards' products and that Great American defended the lawsuit on behalf of Richards as obligated by the insurance policy, that the jury returned a verdict against Richards for $25,000 general damages and $500,000 punitive damages on which judgment was entered February 2, 1981. The complaint avers that Great American acknowledged its responsibility to pay the judgment for general damages, but denied that it is obligated to pay the punitive damages. Richards contends that punitive damages are covered under the terms of the policy and seeks a declaration of its rights under the insurance policy and a judgment requiring Great American to pay the punitive damage award.

On September 25, 1981, Richards filed an amendment to its complaint which alleges coverage under an excess liability policy issued by Great American as a supplement to the comprehensive general liability policy which provides in part pertinent to this case:

### GENERAL ENDORSEMENT

### LIBERALIZATION CLAUSE

(EXCESS COMPREHENSIVE GENERAL LIABILITY INSURANCE) IT IS UNDERSTOOD AND AGREED THAT ANY COVERAGE PROVIDED UNDER ANY COMPREHENSIVE GENERAL LIABILITY POLICY AT THE FULL LIMITS OF LIABILITY AS DESCRIBED IN THE SCHEDULE OF UNDERLYING POLICIES, IS COVERED UNDER THIS POLICY AND SUPERCEDES ANY EXCLUSIONS TO THE CONTRARY, UNLESS ADDED BY ENDORSEMENT TO THIS POLICY.

On October 15, 1981, Great American filed its answer to the complaint and admits the judgment against Richards for $25,000 general damages and $500,000 punitive damages, but avers that the judgment is not final because the appeal is pending. Great American specifically admits that the policy of insurance upon which suit is filed covers the judgment for general damages and medical expenses if it is affirmed on appeal, but denies that the policy provides any coverage for the punitive damages. The answer further avers that the contract of insurance should be interpreted according to California law, that an award of punitive damages under California law may be made only upon a finding of malice, and that it is against the public policy of California to allow an insured to be reimbursed for losses caused by its own malicious act.

On October 26, 1981, Great American moved to amend its answer in order to deny that it is obligated to pay *any* of the damages awarded in the California action,

but apparently no action was taken by the Court on this motion. Summary judgment motions were filed by both parties and the trial court overruled the motions and further stayed all proceedings pending the outcome of the California appeal in the tort case. (It is now stipulated that the appeal process in California has been exhausted and that the California Court of Appeals affirmed the trial court's judgment on the jury award of $25,000 general damages and $500,000 punitive damages.)

On December 14, 1983, Great American again filed a motion to amend its answer in order to deny that its policy of insurance obligated it to pay *any* of the damages awarded in the California tort action, and on January 5, 1984, the trial court allowed the filing of the amended answer.

On April 17, 1984, Great American filed a motion for summary judgment and in support thereof relied on the entire record in the California tort litigation. On Richard's motion the trial court ruled the record in the tort action to be hearsay and denied Great American's reliance thereon in support of its motion for summary judgment. On July 10, 1984, Richards filed its motion for summary judgment, and the trial court in granting Richards' motion for summary judgment stated in its memorandum opinion:

In this cause both parties have filed motions for summary judgment, raising the question of whether the defendant is liable, under the terms of the insurance contract, for the punitive aspects of a judgment rendered against its insured. Additionally, the question presented is whether the doctrine of collateral estoppel precluded consideration of the question of coverage.

These questions shall be addressed in their reverse order. On the issue of estoppel, the Tennessee Supreme Court recently held that an insurer was not collaterally estopped from litigating the question of coverage of liability for a judgment in a separate action unless the policy issue was the same issue decided by the previous tort judgment. *Home Insurance Company v. Leinhart*, (Opinion filed October 15, 1985). In this case the question is certainly not the same as that presented in the original California action. The question here is whether liability coverage, based on the language in the insurance contract, is broad enough to impose an obligation on the liability carrier to indemnify the insurer not only for the compensatory award, but also for the punitive aspect of the judgment.

Turning to that question, in *Lazenby v. Universal Underwriters Ins. Co.*, 383 S.W.2d 1, 214 Tenn. 639, the Tennessee Supreme Court has held that a liability policy which entitled the insured to payment of all sums which the insured has become legally obligated to pay as damages, entitles the insured to payment of both compensatory and punitive damages. Generally the Courts agree that where the language of a policy is unambiguous, there is no need to attempt to construct meaning contrary to the clear meaning. Although the policy contains many exclusions, in no place does it attempt to exclude liability for punitive damages.

Accordingly, this Court grants plaintiff's motion for summary judgment, and denies the defendant's motion for summary judgment.

Great American presents for review the issues of whether the trial court erred in granting Richards' motion for summary judgment and whether the trial court erred in denying Great American's motion for summary judgment.

As the trial court's memorandum opinion indicates, the trial court based its decision on the issue of whether punitive damages are covered under the liability insurance policy issued by Great American. We agree with the court's ruling on that point, but this is not the issue to be decided in the lawsuit. Richards' complaint alleges that it is entitled to coverage for punitive dam-

ages, and while Great American's original Answer joined issue on that aspect of the case only, Great American's amended answer filed pursuant to the court order denies that its policy provided coverage for *any* damages assessed against Richards in the California tort case. The policy provision obligates Great American "[t]o pay ... all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence." Thus, the real issue to be decided by the court in the instant ligitation is whether there was an "occurrence" as defined in the insurance policy which would require Great American to pay the damages awarded and other expenses incurred in connection with the California tort case. This issue was not considered by the trial court. The jurisdiction of this Court is appellate only, and we should not attempt to make the first decision in the case here, T.C.A. § 16–4–108 (1980); *John Weis, Inc. v. Reed*, 22 Tenn.App. 90, 118 S.W.2d 677 (1938). For that reason, the order of the trial court granting summary judgment to Richards and denying summary judgment to Great American is reversed and the case is remanded for further proceedings.

Since the case is being remanded for further proceedings, we will consider some of the arguments advanced by the parties in order to provide some guidelines for the future course of the litigation.

Great American asserts in connection with the issue of whether there was an occurrence, the judgment of the California court for punitive damages operates as a collateral estoppel because in order to obtain punitive damages under California law there must be oppression, fraud, or malice, express or implied. We cannot agree with this assertion. The issue in the instant case is not the same issue that was involved in the California tort litigation. The issue before the court is whether there was an accident either expected or intended from the standpoint of Richards. The tort litigation involved the issue of express or implied malice, which would not necessarily involve expectation or intention on the part of Richards. The application of collateral estoppel requires identity of issues and identity of parties or their privies. *Blue Diamond Coal Company v. Holland–American Ins. Co.*, 671 S.W.2d 829 (Tenn. 1984); *Kelly v. Cherokee Ins. Co.*, 574 S.W.2d 735 (Tenn.1978).

Great American also contends that the construction and interpretation of the policy should be under California law because the parties must have contemplated that claims would arise in the State of California, since Richards conducts a large part of its business in that state. Our Supreme Court in *Great American Insurance Company v. Hartford Accident & Indemnity Company*, 519 S.W.2d 579 (Tenn.1975), expressly rejected the "dominant contact" theory which Great American is espousing and held that the rule of lex loci contractus applied in the interpretation of the insurance policy involved in that case which was purchased and issued in New York although the accident giving rise to the dispute occurred in Tennessee.

Great American further contends that in any event there were genuine issues as to material fact which precluded summary judgment for Richards. We note the affidavit filed by Richards in support of its motion for summary judgment establishes (1) that the policies of insurance involved in the litigation were negotiated for, issued, and delivered in Memphis, Tennessee, (2) that Great American, subsequent to the tort litigation in California acknowledged verbally and in writing that its policy provided coverage for compensatory damages, and (3) that after the California judgment Great American declined to appeal the case, and Richards undertook to appeal and incurred various items of expense.

The record also contains answers to interrogatories filed by Richards, in which it responded to Great American's question as to the tort plaintiff's theories of liability against Richards by attaching a copy of the California complaint. That complaint alleged *inter alia* that the prosthesis in-

volved was negligently manufactured and that the defendants knew that the prosthesis could cause serious complications but concealed the defective and unsafe condition for the purpose of maximizing sales and profit. There was no other proof offered by Richards in support of its motion.

Summary judgment is to be rendered by a trial court only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R.Civ.P. 56.03 (1984). In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp. of Tennessee,* 692 S.W.2d 420 (Tenn.App. 1985); *Bennett v. Mid–South Terminals Corp.,* 660 S.W.2d 799 (Tenn.App.1983).

Summary judgment is not proper where, although the basic facts are not in dispute, parties in good faith may disagree about the inferences to be drawn from those facts. *Blue Diamond Coal,* 671 S.W.2d 829; *Prescott v. Adams,* 627 S.W.2d 134 (Tenn.App.1981).

In *Evco Corporation v. Ross,* 528 S.W.2d 20 (Tenn.1975), Justice Harbison commented on the use of summary judgment:

The summary judgment procedure was designed to provide a quick inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id.* at 24–25.

In some respects the instant case is similar to *Kelley v. Cherokee Ins. Co.,* 574 S.W.2d 735 (Tenn.1978). In that case, the tort plaintiff brought a direct action against the defendant's insurance company for payment of a judgment awarded for personal injuries resulting from bullet wounds and blows to plaintiff's body. The insurance company denied coverage based on a policy exclusion which provided that there was no coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." The trial court granted plaintiff's motion for summary judgment holding that there was no genuine issue of disputed fact, since the judgment in the underlying tort case estopped the insurance company from litigating the question of whether the acts of its insured that injured the plaintiff were expected or intended. The Supreme Court reversed and remanded the case for trial on the merits because there was no identity of issues to warrant the application of the doctrine of estoppel by judgment. Apropos of the case at bar, Justice Fones said:

We think it relevant to state, in view of the contentions of the parties before this Court on brief and in oral argument, that the applicability of the exclusion of expected or intended injury is to be determined upon actual facts, not on the allegations in the complaint filed in the tort action. *See Granite States Ins. Corp. v. Mountain States, etc., supra.* Nevertheless, that pleading is subject to any use that may be available under the rules of evidence.

*Id.* at 739.

For the reasons stated, the order of the trial court granting summary judgment to Richards and denying summary judgment

to Great American is reversed, and this case is remanded for such further proceedings as necessary. Costs are assessed one-half against each party.

FARMER, J., and NEARN, J. (Retired), concur.