HARDWARE MUT. CASUALTY CO. *v.* HIGGASON *et al.* (six cases).

(*Nashville*, December Term, 1939.)

Opinion filed December 16, 1939.

AUST, McGUGIN & COCHRAN, of Nashville, and JAMES D. RICHARDSON, of Murfreesboro, for plaintiffs.

WALKER & HOOKER, JACK NORMAN, J. D. B. DEBOW, and WALKER CASEY, all of Nashville, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The Casualty Company, plaintiff-in-error, challenges recoveries in these six consolidated cases, in favor of defendants-in-error on an automobile liability policy issued to W. C. Wright, doing business at Shelbyville, Tennessee, as Wright Motor Company. Defendants-in-error had recovered judgments aggregating more than $10,000, the limit of the policy, against Wright in actions brought to recover for personal injuries suffered in an automobile collision with a car driven by one Malone, who was at the time an employee in an automobile garage and sales business owned by Wright at Murfreesboro, Tennessee, and driving a car belonging to this business. It is conceded that if the Casualty Company is liable on this policy for injuries in this accident the amounts of the judgments are correct.

The Casualty Company denies liability on the ground that its policy sued on did not cover this car and its driver; specifically, that the coverage of the policy, in so far as here pertinent, was limited to cars and employees of Wright engaged in or about, coming out of or connected with the Shelbyville agency, or business; that the indemnity provided was against losses incident to the conduct of this Shelbyville business of the named assured, and none other.

The determinative facts are stipulated. Construction

of the policy is called for. The stipulation states these facts attending the issuance of this policy, the two Wright Garage agencies and the employee and car involved in the accident:

"1. That on February 15, 1928, and effective from March 9, 1928, for a period of one year, the defendant Hardware Mutual Casualty Co., issued to W. C. Wright, doing business as Wright Motor Co., at Shelbyville, Tennessee, its Automobile Sales Agency, Public Garage & Repair Shop Policy No. 808872, the original of which is filed herewith, marked 'Exhibit A', and made a part of this stipulation, and on said dates Wright had no garage or sales agency, except at Shelbyville, Tenn.

"2. That at the time said policy was issued, and on November 15, 1928, W. C. Wright was a resident and citizen of Shelbyville, Bedford County, Tennessee.

. . . . .

"4. That on November 15, 1928, W. C. Wright, doing business as Wright Motor Co., had a branch sales agency at Murfreesboro, in Rutherford County, Tennessee, and on that date, and for some time prior thereto, he had in his employ George W. Malone, who on November 15, 1928, while operating a Nash Sedan belonging to said Wright, bearing Dealer's Tennessee License No. D-18 for the year 1928, and registered in the Office of the County Court Clerk at Shelbyville, Bedford County, Tennessee, and while about the business of said W. C. Wright, doing business as Wright Motor Co., collided with an automobile operated by another, causing injuries and damages which are the basis for the judgments hereinafter referred to.

"5. That the Nash car which collided with the car in which the plaintiffs were riding at the time they were injured was owned by W. C. Wright, doing business as

the Wright Motor Co., and was driven at the time by George W. Malone, who was in the employ of the Wright Motor Co., at the Murfreesboro Sales agency, with two salesmen and one mechanic to serve the Nash automobiles, the Wright Motor Co., at the time having such sales agency at Murfreesboro, Tennessee, and agency and garage at Shelbyville, Tennessee. The car so driven by Malone was a part of the stock merchandise at the Murfreesboro agency, and was not a part of the stock of merchandise at the Shelbyville garage. At the time of the accident the Wright Motor Co., had separate bank accounts, one at Murfreesboro for the Murfreesboro end of the business, and one at Shelbyville for the Shelbyville end of the business, and Wright was in complete charge at both places."

A ground of the motion for a new trial was thus stated:

"(b) Because the policy sued upon did not cover or insure W. C. Wright or his place of business at Murfreesboro, but insured only the sales agency and business at Shelbyville, Tennessee, and that the automobile of Wright or Wright Motor Company was not connected with the Shelbyville agency or place of business, but was connected with and operated from a separate place of business of W. C. Wright in Murfreesboro, Tennessee."

Assignment of error No. 1 in this Court thus more fully states the insistence of the Casualty Company:

"The policy sued upon, No. 808872, Exhibit 'A' to stipulation, a sales agency and garage policy, indemnified W. C. Wright, doing business as the Wright Motor Company, against liability for loss or damage to (a) nonemployees accidentally sustained on or about the premises described in the policy by the operation of assured therein and (b) injuries sustained off the premises by operation of any automobile for purposes of said busi-

ness or pleasure; the name and address of the insured was stated to be 'W. C. Wright, Public Square, Shelbyville, Tennessee', and in the warranties the insured warranted that his automobile sales agency, garage or repair shop is located on the public square at Shelbyville, Tennessee, and that he had none anywhere else.

"The undisputed evidence shows that the Nash automobile of Wright which caused the injury was a part of the sales stock of and was kept and operated at and from a separate sales agency and garage located at Murfreesboro, Tennessee, some twenty-five miles from Shelbyville and had no connection with the premises or operations described in the policy; the Murfreesboro agency being operated separately, with a separate bank account, separate salesmen and mechanics, and a separate manager and, therefore, was not within the policy coverage premium of $39.00 paid therefor."

Looking now to the policy, we find this opening statement, (upon which defendants in error strongly rely as sustaining their theory of unrestricted coverage):

"In consideration of the premium herein provided *and of the warranties herein made,* the Company hereby agrees to insure the Assured named and described herein against the risks assumed hereunder, while within the limits of the United States . . . and Canada, *subject to the provisions herein set forth.*"

This clause is followed by another, entitled "Operations", reading as follows:

"All work incidental and necessary to the conduct of assured's business of operating automobile sales agency, public garage and automobile repair shop, including the operation of any style, type or make of automobile, tractor, or trailer *for all purposes in such business* and for pleasure use, but not the conveying of passengers," etc.

This clause is followed by another, entitled, "Public Liability," which is as follows:

"Indemnity for public liability shall in effect cover injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons not employed by the assured, on or about *the premises described in the policy* and caused by the operations of the assured as described therein; this policy also covers injuries arising out of and *in connection with the business of assured,* sustained by any person or persons not employed by the assured, elsewhere than on the premises of the assured and caused by or resulting from the operation or maintenance and use of any automobile, tractor or trailer, but in no event shall the total indemnity be in excess of the public liability limits specified in the policy."

This clause is then followed by the property damage clause, which is as follows:

"Indemnity for property damage shall in effect cover damage to or destruction of property of any kind [here is excluded property owned or leased by assured] on or about the premises described in the policy and caused by the operations of the assured as described therein; this policy also covers damage to or destruction of property arising out of and in *connection with the business of the assured* elsewhere than on the premises and caused by or resulting from the operation or maintenance of any automobile, tractor or trailer," etc.

The words italicised by us in the foregoing quotations from the policy, are words particularly stressed by counsel for the Casualty Company as supporting their theory of a limited or restricted coverage.

Next in order to the foregoing quotations and lower down in bold letters across the front page are printed the

words "This Policy Is Subject To The Following Conditions," a number being set out, not relevant here.

Page 3 carries the heading, "Special Conditions." To this point the policy is a printed form only, setting forth general provisions without designation of the assured by name, or the location of the business of the assured, the amount of liability assumed, the premiums to be paid, etc. These matters are set forth under the head, "Special Conditions," the name of the assured being given as "W. C. Wright D/B As Wright Motor Company" and "Address of Assured Public Square Shelbyville Bedford (County) Tennessee." It is recited that, "The term of this insurance begins at 12:01 A. M. on the 9th day of March, 1928, and ends at 12:01 A. M. on the 9th day of March, 1929." The limit of liability for one person is fixed at $5,000 and for one accident at $10,000, and for property damage at $1,000. The estimated premiums are stated as $24 minimum for public liability and $15 for property damage, making an estimated total of $39, these estimates being obviously based upon the estimated pay roll. There is a clause providing that, "The payroll shall include the salaries of all active executive officers, general managers, automobile salesmen and proprietors subject to a maximum of $2000 per annum." It is then recited that, "The active executive officers, general managers, automobile salesmen and proprietors are: W. C. Wright."

There next appears on page 3 the title, "Warranties." Under this heading are the following recitals:

"1. The Assured is—                    Individual

(State whether individual, estate, copartnership or corporation, and if a corporation, name State in which incorporated.)

"2. Location of all Automobile Sales Agencies, Public Garages and Repair Shops, by State, Town or City, with Street and Number

"Public Square, Shelbyville, Tennessee.

"3. None of the automobiles are rented to others, or used to carry passengers for a monetary consideration, except as follows:

No Exceptions

"4. The Assured is conducting no other business operations at this or any other location not herein disclosed—Except as herein stated:

No Exceptions

"5. No similar insurance has been canceled by any insurance carrier during the past year—Except as herein stated:

No Exceptions

"The word 'Assured' used in this policy shall mean the individual, partnership, corporation, trustees or estate named herein."

The policy bears an endorsement "Effective date Feb. 11, 1929," reading as follows:

"It is hereby understood and agreed that Warranty #2 under this policy is changed to:

"Location of all Automobile Sales Agencies, Public Garages, and Repair Shops, by State, Town or City with Street and Number (1) Public Square Shelbyville, Tennessee (2) Murfreesboro, Tennessee."

The accident out of which the present litigation arose,

as has been heretofore shown, occurred on the 15th of November, 1928, approximately three months before this endorsement was made, extending the coverage so as to include Murfreesboro, Tennessee.

Reliance is had by defendants-in-error upon the broad language contained in the opening paragraph of the policy, reading, as heretofore quoted:

". . . the Company hereby agrees to insure the Assured named and described herein against the risks assumed hereunder, while within the limits of the United States of America, (exclusive of Alaska, the Hawaiian, Phillippine and Virgin Islands and Porto Rico) and Canada, subject to the provisions herein set forth."

It is insisted that, consistent with this broad language, the policy covered the car and driver involved in this accident, despite the fact that the accident took place away from Shelbyville and that the car and driver involved belonged to an altogether different agency from that described in the policy as located at Shelbyville. On the other hand, for the Casualty Company reliance is placed upon the recitations contained in this general insuring clause conditioning the liability upon (1) "the warranties herein made," (2) "the assured named and described" under the "Special Conditions" found in the policy on page 3, and (3) the concluding words, "subject to the provisions herein set forth."

As said in the recent opinion in *State Automobile Mutual Insurance Co.* v. *Connable-Joest, Inc.*, 174 Tenn., 377, 382, 125 S. W. (2d), 490, 492, it is usual in policies of this character to first set forth the general coverage provisions and then the exclusions, but "the latter cannot, of course, be held to be in conflict with the former. The limitations of the insurance are found in the exclusions."

The policy construed in that case was similar to that

now before us, although not identical. Limitations in the exclusion clauses were given effect and the insurer was held not liable under circumstances coming within these exclusions. The case is cited on the briefs in this case. It appears to be in point chiefly as authority for the general proposition that the provisions of such a policy must be construed as a whole, and that plain and unambiguous language of a contract contained in what is therein described as the "Schedule of Hazards" must be given effect.

This is consistent with the general and fundamental rule that contracts are to be searched to discover what was within the contemplation of the parties executing them. Here the test is, did the parties contemplate that this policy contract should cover any business plant or operation which the assured might own or operate anywhere, and the cars and employees connected with any such business, or was it the purpose to cover only the named and described business at Shelbyville, and accidents growing out of its conduct, wherever they might occur?

We find but one case cited on the briefs in which a policy like the one now before us in all material respects was construed on the question here involved of the extent of its coverage. This is the case of *United States F. & G. Co.* v. *Baldwin Motor Company* (Tex. Com. App.), 34 S. W. (2d), 815, 816. This policy opened with a general insuring clause reading: "In consideration of the premium and subject to the terms, limits and conditions set forth herein, does hereby insure the assured . . . against liability for loss and/or expense, arising or resulting from claims upon the assured for damages in consequence of an accident occurring within the limits of the United States and Canada during the term of this

policy." But, as in the instant case, in later clauses under conditions and warranties it was recited that the assured's sales agencies and places of business were located in certain named towns, to-wit, Tyler, Nacogdoches, Henderson and Jacksonville. The Baldwin Company had opened before the accident another garage and sales agency in the town of Lufkin. An employee of the Lufkin sales agency, while operating an auto belonging to the Lufkin branch, ran into and injured a Mr. and Mrs. Rogers. The insurance company declined to recognize liability, one ground being that Lufkin was not listed or named in the policy as one of the business places or sales agencies covered.

The Court first re-stated the general rule that, "While policies of insurance should be construed most favorably to the insured, they must not be so construed as to make a new contract in disregard of the plain and unambiguous language used. Where the language used is plain and unambiguous, courts must enforce the contract as made by the parties," citing authorities.

The Court then held that the contract of insurance did not cover a case arising out of a location not designated in the policy. In the course of the opinion the Court said:

"The policy in question here insured against loss and expense for bodily injuries or death, and against damages or destruction of property, by reason of the operation and maintenance of an automobile garage, sales agency, or service station, including the repair shop, if any, in connection therewith, as located and described in the schedule of statements contained in the policy, and bound the insurer to defend suits brought against the assured to enforce a claim, whether groundless or not, on account of damages suffered or alleged to

be suffered 'under the circumstances hereinbefore described,' which can mean only because of the operation and maintenance of a garage, sales agency, or service station located and described in the policy, which does not include the city of Lufkin, in Angelina county.

. . . . .

"As between the insurance company and the motor company, it was of no concern to the former how negligent the motor company's employees connected with its sales agency or plant at Lufkin were, because that was not included in the contract of insurance."

█ Learned counsel for defendants-in-error argue that there are differences between the form and details of the recitals in the "Schedule of Statements" in the policy in the Baldwin case and the "Special Conditions" and "Warranties" in that now before us which effectively distinguish the cases. We have given this argument, ingeniously made, careful consideration. We find the designation to be equally definite and exclusive in these cases. While in the Baldwin case the form read "Each Branch must be separately listed," in the instant case the form calls for, "Location of all Automobile Sales Agencies, Public Garages and Repair Shops, by State, Town or City, with Street and Number," and this is followed by the express recital that "The Assured is conducting no other business operations at this or any other location not herein disclosed—Except as herein stated," followed by the typewritten words, "No exceptions." Here, then, we have not only a listing of the particular locations covered, but an express declaration that there are none other.

█ In this connection, counsel quote the provision that, "The term of this insurance begins at 12:01 A. M. on the 9th day of March, 1928, and ends at 12:01 A. M.

on the 9th day of March, 1929, Standard Time, at the named Assured's address as to each of said dates," and argue that, "Obviously, it was not contemplated that the 'Standard Time' would change at Shelbyville, Tennessee, prior to the expiration of the policy one year after its issuance, but rather that the assured's address, and consequently the Standard Time at such address, might change in the event the assured moved or opened other places of business." We are unable to give this provision this meaning. To us it seems apparent that the intention was to fix the time at the Shelbyville location, regardless of where, in the United States or Canada, the accident might occur, consistently with the coverage of the policy of an accident anywhere in the United States or Canada, arising out of the use of a car, or the conduct of an employee, coming from and connected with the Shelbyville agency.

It is argued for defendants-in-error that the "Warranties" before mentioned, plainly limiting the coverage to the named location, did not avoid the policy because they did not "increase the risk of loss," (Code sec. 6126), and because they were *in praesenti*, and not continuing. It is said that these were mere "statements" only that Wright, the assured's, place of business was at a particular location. It is necessary only to give to these "Warranties" the force and effect of "statements" designating the particular and sole "Automobile Agencies" or "business operations" to which the policy was intended to apply.

The case seems to us to come down to this. We have before us an "Automobile Sales Agency Public Garage and Automobile Repair Shop Policy" for construction as to what automobile agency, garage and repair shop, or shops, it applies. While in its general insuring clause

the insurer "agrees to insure the assured named and described herein against the risks assumed hereunder, while within the limits of the United States," etc., it is expressly recited in this opening clause that this agreement is "In consideration of . . . the warranties herein made," and, in the closing clause, that it is "subject to the provisions herein set forth." We find that the assured is named as W. C. Wright, doing business as Wright Motor Company in Shelbyville, Bedford County, Tennessee, thus definitely locating the Automobile Agency, Garage, etc., which is the subject of the contract. And looking to "Warranties," referred to in the above mentioned general insuring clause, we find that the parties proceed to describe, with even more definiteness, the Automobile Sales Agency, etc., the "business operations" to which this policy applies, and as to which the risk is assumed. And we find that this designation is not only definitely confined to an Agency owned and operated at Shelbyville, but contains an express statement that the Assured "is conducting no other business operations *at this or any other location.*" It may be conceded that the "Warranties" in this policy are not such as to avoid the policy, as argued for defendants-in-error. The Casualty Company does not seek to avoid the policy in reliance on the falsity of representations. But, certainly, the representations made under this heading may be looked to and given effect as indicating what business operation was intended to be covered by this Automobile Agency, etc., Policy.

Other cases are referred to on the briefs, but we find none of them sufficiently in point to be of material value. A consideration of the consequences that would follow adoption of the insistence made for defendants-in-error is convincing against the claim made. If this policy cov-

ered losses to Wright arising out of the operation of a business of his in Murfreesboro, then it would cover equally losses which might arise out of any business of like nature he might choose to operate anywhere "within the United States and Canada". And not one only, but as many as he might have had when the policy was issued, or might have opened at any time during the term of the policy. If the limitation was not to Shelbyville, then there was none "within the United States and Canada." The statement of this proposition is its own answer. Such a reckless and improvident assumption of unlimited risk cannot be assumed to have been contemplated.

A second contention is made for defendants-in-error, namely, that the Casualty Company waived its right to contest liability under this policy by defending the actions brought in these cases against Wright Motor Company. This doctrine invoked is variously and somewhat confusedly defined as waiver, estoppel and election. There can be no question but that many Courts hold that an insurance company will not be permitted to deny liability under its indemnity policy, after it has taken charge of and conducted the defense of the claims asserted against its assured, without having reserved its rights by some form of agreement, stipulation or notice. A leading case reviewing exhaustively the authorities, while applying estoppel on its facts, but recognizing that it has no application when reservations are taken, is *Oehme* v. *Johnson,* 181 Minn., 138, 231 N. W., 817, 81 A. L. R., 1308. The subject is fully treated in 72 A. L. R., 1498, and 81 A. L. R., 1382, the annotations directly discussing automobile cases beginning on page 1386. On page 1383, this "Statement of general rule" is made:

"An indemnity insurer will not be estopped to set up

the defense that the insured's loss was not covered by the contract of indemnity, by the fact that the insurer participated in the action against the insured, if, at the same time, it gives notice to the insured that it does not waive the benefit of such defense.''

And, directly in point here, is this statement from 5 Couch Ency., of Insurance Law Cumulative Supplement, page 127: ''An insurer which before undertaking the defense of an action against the insured expressly reserves its rights does not waive the defenses to the policy by so defending the insured.''

A further review of the authorities is unnecessary to sustain the conclusion, pertinent here, that the insurer is not cut off from contesting liability to his assured by defending an action for damages against his assured, where this right has been reserved by proper notice or stipulation.

In even the case relied on and first quoted from by counsel for defendants-in-error, *Ferris* v. *Southern Underwriters* (Tex. Civ. App., 1937), 109 S. W. (2d), 223, 224, this exception is recognized, the statement of this ground of the complaint being, ''because in assuming the defense of the suit brought by appellants against the assured, G. A. Carter, *without reservation of right or nonwaiver agreement,* the appellee insurer became liable for the judgment to the extent of the policy obligation, even though the policy or contract did not cover damages for death resulting from injuries.'' (The italics are ours.)

The policy in this case contained the usual clause obligating the insurer to defend suits, ''even if such suit is groundless, false or fraudulent'', and to pay all costs taxed against the defendant in any suits so defended, and all expenses, etc. The accident occurred on Novem-

ber 15th, 1928. Wright, the insured, first learned of any claim that a car owned by him was involved on November 13th, 1929, within two days of a year later, and he then for the first time gave notice to the Casualty Company. Wright's manager at his Murfreesboro place learned of the accident immediately after its occurrence, but was advised by Malone, his employee, who was involved in the accident, that he was on his own business and driving his own car, a Pontiac.

However, the claim of the plaintiffs in the actions for damages suffered in this accident was that the car was owned by Wright and was being driven by his servant, on his business, and that he was, therefore, liable. Whether the car was a Pontiac or a Nash, and whether it came out of the Shelbyville agency, or that located at Murfreesboro, was in dispute. Whether or not timely notice had been given the Casualty Company was also subject to dispute. In this state of uncertainty, in order to preserve with certainty its rights in the premises, the Casualty Company, before undertaking the defense of these actions against Wright Motor Company, entered upon a "non-waiver agreement" with its assured, Wright Motor Company, reading as follows:

"For and in consideration of the sum of One dollar ($1.00) paid by each of the parties hereto to the other, the receipt whereof is hereby acknowledged, and for other good and valuable consideration, it is agreed by and between Wright Motor Company hereinafter called the assured, the assured under policy No. 808872 issued by the Hardware Mutual Casualty Company under date of March 9, 1928, and expiring March 9, 1929, and said Hardware Mutual Casualty Company, hereinafter referred to as the Company, that any action taken by the Company in the past or in the future, in investigating

the cause of loss, injury or damage to the person or property of third parties, or investigating and ascertaining, in the past or in the future, the amount of loss and/or damage to the property of the assured, or investigating and ascertaining in the past or in the future, the amount of loss, injury and/or damage to the person or property of any other person whomsoever, claimed to have been caused by an accident with assured's Pontiac car, on the 15th day of November, 1928, shall not operate in any way as a waiver or invalidate any of the conditions of said policy nor any of the rights of either of the parties hereto under said policy; and in the event any suit or suits have been in the past or shall be filed against the assured by any persons whomsoever because of the said automobile accident of November 15, 1928, the entering of any appearances therein by attorneys for the company, the filing of any pleadings therein by attorneys for the company, the doing of any work in defense thereof by the company, or the negotiations with attorneys for the plaintiff or plaintiffs therein by the company, or by its attorneys, or the election by the company to defend said suit, shall not be construed as a waiver of any of the conditions of said policy or of any of the company's rights thereunder; and no act of the company done since the happening of said accident or since the accident was reported to the company shall be construed as an admission of liability under the said policy of insurance on the part of the company.

"It is the intention of this agreement to preserve all the rights of both of the parties hereto and to provide for a full and complete investigation of the said accident, the alleged losses and alleged claims and the amount thereof, arising out of said accident, and for the defense of said actions and suits if deemed advisable

by the company, without in any way affecting, impairing or adding to the liability of the company under said policy or waiving any of its rights thereunder, and preserving to the company the right, on its part, to disclaim liability for any claim or claims, action or cause of action of any kind or nature whatsoever arising out of said accident, and no act of the company hereunder shall be construed as an admission of its liability.

"Executed at Murfreesboro, Tenn., this 22nd day of November, 1929.

"Wright Motor Co.
_____
Assured

By W. C. Wright
_____
Hardware Mutual Casualty Company

"In presence of:

"I. D. Ruben

"Geo. Oliver

By W. J. Rellahan
_____
Its Agent."

Thereupon, the Casualty Company retained James D. Richardson, of the Murfreesboro bar, to defend, and he did so throughout the long litigation which ensued, first in the Court at Murfreesboro and later at Nashville, where it was finally terminated in favor of defendants-in-error here.

The recitals touching the execution of this agreement and the employment of Mr. Richardson are found in paragraphs 7, 8 and 9 of the stipulation of fact in this case, reading as follows:

"7. That the defendant insurance company following the institution of said suits obtained the paper writing dated November 22, 1929, which is filed herewith,

marked 'Exhibit B', and made a part of this stipulation, and which paper writing is witnessed by Mr. James D. Richardson and another, but Mr. Richardson at the time of the execution of said paper writing had not been employed by the defendant insurance company, but was later employed, his name being suggested by W. C. Wright; and previous to that time Mr. Richardson had never represented the defendant insurance company, and had never had any connection of any sort with it.

"8. That the defendant insurance company made an investigation of the cases, and employed Mr. James D. Richardson, of Murfreesboro, Tennessee, and Mr. Zach T. Carney of Shelbyville, Tennessee, to defend said suits as attorneys representing and appearing for W. C. Wright.

"9. That said Wright had no attorney or attorneys representing him in said suits at Murfreesboro other than Messrs. Richardson and Carney, who were employed and paid as aforesaid, for the services rendered in the defense of these cases by the defendant insurance company."

In this situation, the Casualty Company maintains that it brought itself within the rule, heretofore noted, and thus tersely stated by the Supreme Court of Alabama in *Insurance Co. of North America* v. *Williams,* 200 Ala., 681, 77 So., 159, 165:

"The status quo of the parties to the policy may be maintained by a non-waiver agreement entered into by them before and at the time of the investigation and attempted adjustment of the loss."

Counsel for defendants-in-error challenge the validity of this written non-waiver agreement upon the following grounds, as we understand: (1) that the agreement is without consideration, (2) that it refers to the car

involved in the accident as a Pontiac, when the proof showed it to have been a Nash, and (3) that in defending the actions for damage without contract obligation to do so the Casualty Company was unlawfully engaging in the practice of law.

We are unable to agree. (1) Stress is put on the recital of one dollar as the consideration, and the concession that this dollar was not, in fact, passed. This overlooks the further recital of "other valuable considerations", which it seems to us plainly appear on the face of the instrument, for example, the agreement to defend these actions as to which it was not then clear that the Casualty Company was obligated. But this contention might well be met by the showing made by this instrument and the pertinent recitals of the stipulation of fact, that definite notice was thus conveyed to the Assured that, in undertaking the defense, the Casualty Company was not waiving its right to deny liability under its policy. The authorities above cited sustain the view that clear notice to this effect, even without a formal agreement, will protect the insurer from the application of the waiver-estoppel rule invoked.

(2) It is true that the litigation in the actions for damages developed and determined that the car was a Nash, rather than a Pontiac, as originally asserted by Malone. But the recitals of the instrument fixing the date of the accident as that of November 15th, 1928, as well as recitals of the stipulation of fact, clearly show that the intention of the parties was to relate the agreement to this accident and the litigation growing out of it. There can be no doubt about this. The agreement must be construed as a whole, and in the light of the circumstances surrounding its execution.

(3) Reliance is had upon a holding of the Tex-

as Court of Civil Appeals, in the case of *Montgomery* v. *Utilities Insurance Co.,* 117 S. W. (2d), 486, that the insurer was illegally engaged "in the practice of law" when it undertook and conducted, through its attorneys, the defense of the damage suit in that case. Without burdening this opinion with a detailed discussion of that exceptional holding as to the soundness of which, under Texas statutes, we express no opinion, it is sufficient to say that the facts differ so radically from those of the instant case that we regard that holding as without application. And it may be added that under the construction given our Tennessee statutes (Chapter 30, Public Acts of 1935) defining the practice of law in the recent case of *Haverty Furniture Co.* v. *Foust,* 174 Tenn., 203, 124 S. W. (2d), 694, no such decision could be reached in this jurisdiction.

On the grounds herein set forth, the judgments must be reversed and the actions dismissed.