AMERICAN HOME ASSURANCE
CO., Plaintiff/Appellee,

v.

OZBURN–HESSEY STORAGE
CO., Defendant/Appellant.

Supreme Court of Tennessee,
at Nashville.

Sept. 3, 1991.
Rehearing Denied Oct. 14, 1991.

R. Dale Grimes, J. Mark Tipps, Bass, Berry & Sims, Nashville, for defendant/appellant.

Robert Orr, Jr., Levine, Mattson, Orr & Young, Nashville, for plaintiff/appellee.

## OPINION

O'BRIEN, Justice.

This suit was initiated in the Chancery Court for Davidson County as a declaratory judgment action by plaintiff, American Home Assurance Company, against defendant, Ozburn–Hessey Storage Company. During all times pertinent to these proceedings American Home was an insurance company licensed and authorized to write insurance and conduct business within the State of Tennessee. It provided "warehouseman or bailee liability" insurance for Ozburn–Hessey Storage Company which conducted business as a warehouse operator with warehouses at several locations in the Nashville and Middle Tennessee area. The policies of insurance involved provided $2,000,000 of coverage with a $10,000 deductible for each "occurrence," as that term was defined in the policies.

In early 1980, Ozburn–Hessey contracted with the Trane Company to provide warehouse space and labor for storage and distribution of Trane's products at defendant's facilities in Nashville. Defendant received heating and air conditioning units and other goods from Trane and stored and distributed the goods at and from its facilities as agreed. In May of 1982, the Trane Company filed suit against Ozburn–Hessey in the Chancery Court for Davidson County, Tennessee styled "The Trane Company

v. Ozburn–Hessey Storage Company" Docket No. 82–913–III, alleging Ozburn–Hessey had damaged between 5,000 and 8,000 of its products during the warehousing operation between March of 1980 and December of 1981.

In the fall of 1981 Trane made a claim for damaged units. Ozburn–Hessey notified American Home at the time the claim was made. Trane originally sought $347,084 in damages and later amended its complaint to seek damages in excess of $500,000. Ozburn–Hessey disputed the claim. American Home undertook the defense of the action. Ozburn–Hessey did not hire separate counsel to defend the case but relied solely and unconditionally upon the representation provided by American Home, pursuant to the terms of the policies. After some three years of litigation and negotiation, in January 1985, American Home negotiated a settlement with Trane under which it paid $450,000 for a release and discharge of the claim against Ozburn–Hessey. American Home alleged in this action against Ozburn–Hessey that it was entitled to reimbursement for the full $450,000, on the premise that it had no liability to Ozburn–Hessey under its policy because the Trane claim involved 5,925 separate "occurrences", none of which exceeded the $10,000 deductible provided in its policy of insurance for each occurrence.

Ozburn–Hessey defended the suit, denying liability to American Home, and subsequently moved for summary judgment on the ground that American Home undertook the defense of Ozburn–Hessey for approximately three (3) years ... without a reservation of rights. By doing so, American Home waived its right and was estopped to assert any grounds of non-liability under the policy on the claim asserted in the Trane lawsuit. The trial court granted the motion for summary judgment, finding there was no genuine issue as to any material fact. The court held that defendant was entitled to a judgment as a matter of law for the reason that American Home was estopped to deny liability under the

insurance policy on the claim upon which the action was based.

American Home took the case to the Court of Appeals presenting three issues:

(1) Whether the Chancellor erred in holding that by furnishing a defense to Ozburn–Hessey without a reservation of rights American Home was estopped to rely on its $10,000 policy deductible to deny liability?

(2) Was it error to hold that there was no genuine issue of material fact as to whether Ozburn–Hessey was prejudiced because American Home provided a defense in the Trane litigation without a reservation of right?

(3) Whether the Chancellor erred in holding that insurance protection not contained within the insuring portions of the insurance policy, not commonly available in the industry, may be created by estoppel?

The Court of Appeals pretermitted two of the issues posed and rendered its opinion on the sole issue of whether the trial court erred in holding that, by furnishing a defense to Ozburn–Hessey without a reservation of rights, American Home was estopped to rely on its $10,000 policy deductible to deny liability.

The intermediate court, citing from 44 Am.Jur.2d, Insurance, § 1423 (1982) found the general rule to be that:

"Although there is authority to the contrary, if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.

They found that Ozburn–Hessey relied on four (4) Tennessee cases which were in accord with the general rule,[1] but each had

---

1. *Hardware Mutual Casualty Co. v. Higgason,*  175 Tenn. 357, 378, 134 S.W.2d 169, 176–77

a common thread, i.e., there was either no coverage under the policy, or there had been a violation by the insured of a policy provision which would have brought about a forfeiture, and notwithstanding either lack of coverage or policy violations, the insurance company defended without a "non-waiver" or a "reservation of rights." They held that this case did not fall into the same category. They considered, and declined to apply, the rule that there is a presumed prejudice to an insured which estopped an insurer to assert a policy defense where the insurer defended without a "non-waiver" or a "reservation of rights", even though the insurer had knowledge of a ground of forfeiture or noncoverage under the policy. They found that American Home was obligated to defend Ozburn–Hessey under the terms of the policy against the loss allegedly sustained by Trane Company, because there had been no violation of a policy provision by the insured, nor had it done anything that would have caused a forfeiture.

They opined that, under the factual situation as stated, there was no presumption of prejudice by American Home's failure to defend under a "reservation of rights" or "non-waiver", and it was not estopped to assert the deductible provision of the policy. They remanded the case for trial.

We granted the appeal by the defendant Ozburn–Hessey because we are of the opinion the Court of Appeals went astray in deviating from the general rule applicable in cases of this nature for the reasons stated in their opinion. The issues as couched here are as follows:

(1) Whether the general rule—that a liability insurer is estopped from denying liability for a claim against its insured when it defends the insured without a reservation of rights—applies when the

(1939); *Maryland Casualty Co. v. Gordon,* 52 Tenn.App. 1, 10–12, 371 S.W.2d 460, 464 (1963); *TransAmerica Insurance Group v. Beem,* 652 F.2d 663 (6th Cir.1981); *Commercial Standard Ins. Co. v. Blankenship,* 40 F.Supp. 618, 620 (M.D.Tenn.1941), *Aff'd.* 134 F.2d 784 (6th Cir. 1943).

**2.** This was a second suit in which Maryland Casualty, the insurer, and Paul Southerland, the

defense is provided pursuant to a contractual duty to defend?

(2) Whether Ozburn–Hessey was presumably prejudiced or established actual prejudice as the result of American Home actions?

(3) Whether American Home is estopped from denying liability on the disputed ground that the claim involves thousands of deductibles, which combined, consume the entire coverage of the policy?

▮ In considering the issues raised by the appellant here we find it appropriate to utilize the language of the intermediate court, that is, when an insurer who has a contractual duty to defend does so without a "non-waiver" or a "reservation of rights" is there such presumed prejudice to the insured that the insurer is estopped to rely on the deductible provision of the policy. The lower court held that because American Home was obliged to defend the suit initiated by the Trane Company there could not be any presumption that Ozburn–Hessey was prejudiced by the insurer's failure to defend under a reservation of rights or a non-waiver. That conclusion is not defensible. The law in this State is clear. For at least the better part of a hundred years the rule has been recognized that an insurance company will not be permitted to deny liability under its indemnity policy, after it has taken charge of and conducted the defense of the claims asserted against its insured, without having reserved its rights by some form of agreement, stipulation or notice. See *Fulton Co. v. Mass. Bonding and Insurance Co.,* 138 Tenn. 278, 285, 197 S.W. 866 (1917); *Hardware Mutual Casualty Co. v. Higgason,* supra, 134 S.W.2d at 175. The rule applicable to the circumstances of this case, and which we consider to be the law in Tennessee is stated in *Maryland Casualty Co. v. Gordon,* supra, 371 S.W.2d at p. 464[2] citing from 29A

insured, were involved. In the first case the insurer defended the insured, and his stepson, without any reservation of rights, in a suit for damages resulting from an automobile accident. In the second case the judgment creditors proceeded directly against Maryland Casualty to recover their judgment against the stepson, who

Am.Jur.—Insurance—Sec. 1465, p. 577 [44 Am.Jur.2d, Insurance, § 1423, p. 369]:

"The general rule supported by the great weight of authority is that if a liability insuror, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insuror's unconditional defense of an action brought against its insured, constitutes a waiver of the terms of the policy and an estoppel of the insured to assert such grounds."

█ The rule by its very language establishes the presumption of prejudice. Otherwise, there would be no necessity for its promulgation.

█ Moreover, there was actual prejudice demonstrated in this case. Ozburn–Hessey was required under the terms of the policy to surrender its right to control the defense of the Trane litigation. It relied solely upon the judgment of American Home and its legal counsel in the conduct of the defense. It was not consulted in reference to strategy discussions. It was unable to assess the merits of the Trane claim, or the negotiations leading to the settlement which was made. It is certainly prejudiced by the demand upon it by American Home for payment of the sum of $450,000 having had no opportunity to rebut the evidence concerning the number of separate occurrences claimed by Trane which is now the basis of the insurer's claim against it.

American Home concedes, in fact insists, that it had a duty to defend the Trane claim against Ozburn–Hessey in accordance with the terms of its policy of insurance. The definition of "occurrence" under the terms of that policy is: "The term 'Occurrence', wherever employed in this Policy is defined as (1) an accident that takes place during the period of insurance under this Policy, or (2) in the absence thereof, a continuous or repeated exposure to conditions which unexpectedly cause loss or destruction of or damage to physical property during the period of insurance under this Policy, and all such exposure to substantially the same general conditions existing at or emanating from any one location specified in Part 2 of this Form shall be deemed one occurrence."

The insurer now seems to argue that there were 5,925 separate occurrences, which involved an average of a little under $76 in damage to each of the units, for which Trane claimed compensation from Ozburn–Hessey. Therefore, it was not liable under the terms of the policy since all the damage to the Trane items were caused by accident and there was no single accident which caused as much as $10,000 in damage, which was the deductible under the policy. It says that Ozburn–Hessey is asking the Court to create a policy of no deductible insurance, which would expose it to the potential risk of being required to pay far beyond the policy limits. Whatever the likelihood of that might be, that is not the issue in this case. The issue is whether American Home can assert that possibility so as to entitle them to reimbursement from Ozburn–Hessey for the full $450,000, without disclaiming liability or giving notice of its reservation of rights when it first made the determination that there were multiple accidents involved in the damage to the Trane units. It was under a duty to investigate. It withheld its interpretation of the term "occurrence" for some three years while it simultaneously defended and then settled the Trane claim without the knowledge or participation of Ozburn–Hessey in any of these proceedings.

The dissent in this case appears to discredit the reasoning in the lead opinion

was an additional insured under the policy. The insurer defended on the basis of false representations made in the application for the policy, and no insurable interest. The Court of Appeals held that the insurer had notice, when the policy was issued, that the minor stepson, and not the named insured would drive the insured automobile. They held Maryland Casualty liable under its policy because it accepted notice of the original accident, investigated it and defended the resulting lawsuits without any reservation of rights.

applying the general rule recognized in this State.

The dissenting judge concedes the majority correctly states the general rule of law on the question, but takes the position that the rule is not dispositive of this case. At page 678, *infra*, the following statement is found:

"American Home and Ozburn–Hessey reached full agreement regarding the resolution of the deductible clause question prior to settlement of the Trane lawsuit. To borrow the words of the Court of Appeals, this agreement 'froze' the rights of the parties with respect to each other as they existed on ... the date of the [a]greement." Acting pursuant to this agreement, American Home finalized the settlement and paid Trane for its loss. Having agreed to allow American Home to settle the Trane lawsuit "without such action being a waiver on the part of American Home Assurance Company of its rights under the insurance policies with Ozburn–Hessey Company," Ozburn–Hessey cannot now be heard to complain about American Home's continuation of the settlement negotiations. Having further agreed that questions relating to the number of deductibles owed by Ozburn–Hessey to American Home "are reserved for discussion and/or litigation between Ozburn–Hessey Company and American Home Assurance Company," Ozburn–Hessey cannot now assert that American Home is estopped from raising those questions.

■ The pertinent part of the agreement referred to is restated in the dissent. A superficial reading of it clearly demonstrates that it was not a final agreement between the parties. It was not agreed that American Home could finalize the settlement or pay Trane for its loss without consulting Ozburn–Hessey Company. It was agreed that "American Home Assurance Company may proceed *to attempt to negotiate a settlement* on behalf of Ozburn–Hessey Company with The Trane Company pertaining to the above-mentioned law suit [TRANE v. OZBURN–HESSEY] without such action being a waiver

on the part of American Home Assurance Company of its rights under the insurance policies with Ozburn–Hessey Company." It also contains the provision, *"your client, [Ozburn–Hessey Company] of course, is also not waiving any of its rights under the policies pertaining to those issues by virtue of this agreement."* (Emphasis supplied).

Any rights of the parties frozen by the agreement were fixed by the long passage of time which preceded it. Under the law in this State and the facts of this case the waiver by American Home had occurred long before the letter from counsel, dated 25 January 1985, setting out the proposed agreement. This agreement says no more than the insuror would *attempt* to reach a settlement. It does not state in any fashion that Ozburn–Hessey waived its right to approve or disapprove any settlement reached. To the contrary it contains the specific provision that it was not waiving any of its rights under the policies pertaining to the issues of the number of insurance policies applicable to the Trane lawsuit, and the number of deductibles and total dollar amount which might be required of it to be contributed to American Home after settlement.

Insofar as this record reveals, American Home proceeded with the settlement without consultation with its insured, made payment to the claimant and then filed suit against the insured for the full amount of the settlement.

We are of the opinion the trial court acted correctly in granting the motion for summary judgment of Ozburn–Hessey and dismissing the cause of action filed by American Home. The judgment of the Court of Appeals overruling the trial court is reversed. The judgment of the trial court is reinstated. Costs are assessed against plaintiff-appellant American Home Assurance Company.

DROWOTA, FONES and HARBISON, JJ., concur.

DAUGHTREY, J., filed a separate dissenting opinion.

DAUGHTREY, Justice, dissenting.

The underlying controversy in this case began when 5,925 Trane air conditioning units stored in the Ozburn–Hessey warehouse were damaged as a result of a leaky roof. As Ozburn–Hessey's insurer, American Home represented Ozburn–Hessey in the dispute concerning the air conditioning units. The Trane suit was eventually settled for $450,000.

The controversy now before this Court concerns American Home's insistence that it is entitled to a reimbursement of that $450,000 because, it claims, there were 5,925 separate "occurrences," each of which is subject to a $10,000 deductible. Ozburn–Hessey asserts in response that American Home is precluded from making this assertion by its failure to file a timely "reservation of rights" that would allow it to take this position under the insurance contracts and yet continue the defense of the action.

The trial court granted Ozburn–Hessey's motion for summary judgment on this issue, holding that American Home is estopped to deny liability. The Court of Appeals reversed, specifically declining to espouse the rule set forth in the *Restatement (Second) of Judgments* § 58 (1982) that "[i]f the insurer defends the insured pursuant to a contractual duty to defend, the insurer must do so under a properly communicated reservation of rights to later litigate coverage." Rather, the Court of Appeals held that under the facts in the record, American Home was obligated to provide a defense for their insured and that there was no presumed prejudice in their doing so without a reservation of rights. This Court granted permission to appeal, and the majority now proposes to reverse the decision of the Court of Appeals and affirm the trial court. For the reasons stated below, I cannot join in the majority opinion.

As noted, the issue we are asked to decide is whether American Home is estopped from asserting that the $10,000 deductible applies to each of the 5,925 damaged units. In answering this question in the affirmative, the majority has failed to mention certain pertinent facts in its opinion. The record indicates that after attempting to settle the Trane dispute itself, Ozburn–Hessey turned the matter over to American Home, its insurer, in the fall of 1981. America Home undertook the defense of the case, began discovery, and, in January 1985, with trial set for February, reached a tentative settlement. No one from Ozburn–Hessey had been involved in the final negotiations with Trane, but prior to settling the case, American Home raised the question of the deductible clause with Ozburn–Hessey. As a result, counsel for Ozburn–Hessey and American Home entered into a written agreement on January 24, 1985, which in pertinent part provided:

As we have agreed, American Home Assurance Company is going to attempt to reach a settlement on behalf of Ozburn–Hessey Storage Company with Trane pertaining to the [Trane v. Ozburn–Hessey] lawsuit. There apparently exist some questions between [Ozburn–Hessey] and [American Home] as to how many insurance policies would be applicable to the above-mentioned lawsuit. Also, there appear to exist some questions about how many occurrences (as defined by the policies) may have happened with reference to the above lawsuit and the claim of Trane and therefore how many deductibles would be applicable to the loss and how much money should therefore be contributed to the settlement amount by Ozburn–Hessey under the provisions of their policies with American Home Assurance Company.

We have agreed that American Home Assurance Company may proceed to attempt to negotiate a settlement on behalf of Ozburn–Hessey Company with The Trane Company pertaining to the above-mentioned lawsuit without such action being a waiver on the part of American Home Assurance Company of its rights under the insurance policies with Ozburn–Hessey Company. Ozburn–Hessey Company has therefore authorized you to sign this letter as an indication of its agreement that the issue of the number of insurance policies applicable to the lawsuit and the number of deductibles

and total dollar amount which may be required of Ozburn–Hessey to be contributed to American Home Assurance Company after settlement are issues which are reserved for discussion and/or litigation between Ozburn–Hessey Company and American Home Assurance Company. Your client, of course, is also not waiving any of its rights under the policies pertaining to these issues by virtue of this agreement.

After entering into this agreement, counsel for American Home consummated the settlement of the Trane case for $450,000.

The majority correctly states the general rule of law on the question of whether a reservation of rights would normally be required for an insurer to continue defense of a lawsuit once the question of coverage arose. An insurer that undertakes defense of an insured without having made a reservation of rights is estopped to deny coverage after the insured has been cast in the suit so defended. *Maryland Casualty Co. v. Gordon*, 52 Tenn.App. 1, 10–12, 371 S.W.2d 460, 464 (1963). An argument can be made in this case that a reservation of rights was not required, because the dispute here concerns an interpretation of the deductible clause and not, essentially, coverage. Nevertheless, clear notice, made early on, of American Home's contentions regarding the deductible clause would have protected the company from litigation concerning its capacity in this regard. *See Hardware Mutual Casualty Co. v. Higgason*, 175 Tenn. 357, 378, 134 S.W.2d 169, 176–77 (1939).

The general rule, however, is not dispositive of this case. This Court need not resolve the question of whether American Home properly made a timely notification of a reservation of rights, because timely or not, American Home and Ozburn–Hessey reached full agreement regarding the resolution of the deductible clause question prior to settlement of the Trane lawsuit. To borrow the words of the Court of Appeals, this agreement " 'froze' the rights of the parties with respect to each other as they existed on ... the date of the [a]greement." Acting pursuant to this agreement, American Home finalized the settlement and paid Trane for its loss. Having agreed to allow American Home to settle the Trane lawsuit "without such action being a waiver on the part of American Home Assurance Company of its rights under the insurance policies with Ozburn–Hessey Company," Ozburn–Hessey cannot now be heard to complain about American Home's continuation of the settlement negotiations. Having further agreed that questions relating to the number of deductibles owed by Ozburn–Hessey to American Home "are reserved for discussion and/or litigation between Ozburn–Hessey Company and American Home Assurance Company," Ozburn–Hessey cannot now assert that American Home is estopped from raising those questions.

Waiver is the voluntary relinquishment by a party of a known right. *Chattem, Inc. v. Provident Life & Accident*, 676 S.W.2d 953, 955 (Tenn.1984). It is proven by a clear, unequivocal and decisive act of the party, showing such a purpose. *Springfield Tobacco Redryers v. City of Springfield*, 41 Tenn.App. 254, 293 S.W.2d 189, 199 (1956).

By the clear and decisive act of entering into the January 1985 agreement with American Home, Ozburn–Hessey voluntarily relinquished rights relative to the Trane lawsuit. When faced with the questions regarding deductibles, Ozburn–Hessey had the option of delaying the settlement of the Trane lawsuit pending resolution of the deductible question, or retaining other counsel to continue the Trane lawsuit while discussing or litigating the question of the deductible. Ozburn–Hessey's decision to accept American Home's continued representation constitutes a waiver of the rights it now asserts in this action.

Because of the agreement entered into by the parties in January 1985, American Home should be allowed to raise the question of the deductibles under the policies. American Home did not "lay in ambush," as the majority characterizes the company's actions. It raised the disputed issue, and its insured, apparently with the assistance of competent counsel, agreed to set

the question aside for resolution on another day. That day has now arrived, and I conclude that the trial court should have permitted the suit to proceed to trial. For this reason, I would affirm the judgment of the Court of Appeals.

ORDER ON PETITION TO REHEAR

O'BRIEN, Justice.

A respectful Petition to Rehear has been filed in this cause which has been considered and is denied.

DROWOTA, FONES and HARBISON, JJ., concur.

DAUGHTREY, J., dissents.