COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

February 27, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY | ) | KNOX COUNTY |
| | ) | 03A01-9706-CH-00225 |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. FREDERICK D. McDONALD, |
| | ) | CHANCELLOR |
| | ) | |
| AUTO OWNERS INSURANCE COMPANY, | ) | |
| INC., and RONALD K. MINK | ) | |
| | ) | |
| Defendants-Appellees | ) | REVERSED AND REMANDED |

BRIAN H. TRAMMELL OF KNOXVILLE FOR APPELLANT

LINDA J. HAMILTON MOWLES OF KNOXVILLE FOR APPELLEE AUTO OWNERS
INSURANCE COMPANY, INC.

O P I N I O N

Goddard, P.J.

        Allstate Insurance Company ("Allstate") appeals the

dismissal of its suit against Auto Owners Insurance Company

("Auto Owners") and Ronald K. Mink by Chancellor McDonald, Knox

County Chancery Court.  The suit was the result of Auto Owners'

denial of coverage to Mr. Mink, which forced Allstate to pay to

its insured, Susan E. Smith, the sum of $17,289.33, based on the

judgment she received in the Circuit Court action.  Allstate

sought recovery for this amount plus payment made to Mrs. Smith under the medical coverage of $1712.60 and payment under the property damage coverage of $2009.54.

On July 13, 1992, Mr. Mink was driving easterly along a downtown Knoxville I-40 overpass. At that same time, Mrs. Smith was driving westerly along the I-40 Business Loop ramp which passes underneath the overpass being traveled by Mr. Mink. Mr. Mink's vehicle struck the outside concrete guardrail, causing a piece of concrete to fall through the windshield of Mrs. Smith's vehicle as she proceeded west below the overpass. Mrs. Smith sustained personal injuries in the accident.

In his deposition Mr. Mink testified that a phantom vehicle had swerved into his lane and forced his vehicle into the overpass guardrail. The police report lists two witnesses who were traveling behind Mr. Mink and neither witness could confirm nor deny the existence of the alleged phantom vehicle.

At the time of the accident the vehicle Mr. Mink was driving was insured by Auto Owners. On October 14, 1992, Mrs. Smith and her husband instituted an action against Mr. Mink in the Knox County Circuit Court for the injuries and damages she sustained. Allstate was served with process as the underinsured carrier for Mr. and Mrs. Smith.

Auto Owners retained Attorney Robert Crawford to defend Mr. Mink in the Circuit Court action. Mr. Mink did cooperate in

2

the investigation of the claim, including giving his statement and assisting in the preparation of interrogatory responses.  He appeared and gave his deposition on July 7, 1993.

The Circuit Court action was set for trial and rescheduled several times before finally being set and tried on September 11 and 12, 1995.  Attorney Crawford attempted to notify Mr. Mink by certified mail of one of the trial settings.  The letter was returned unclaimed.  Attorney Crawford was unable to locate Mr. Mink and discussed with Auto Owners the need to retain a private investigator.  On April 25, 1995, the investigator reported that Mr. Mink had been located in the Knox County Detention Center.

Attorney Crawford met with Mr. Mink on May 12, 1995 in a holding room at the Knoxville City-County Building.[1]  In that meeting, Attorney Crawford advised Mr. Mink of the September 11, 1995, trial date, and Mr. Mink stated that he would be present for the trial.  Mr. Mink also told Attorney Crawford that he could be contacted by mail in care of his mother, Virgie Mink, or at work with the Painter's Local Union #437.  After the meeting, Attorney Crawford telephoned Virgie Mink and obtained her mailing address.  Attorney Crawford's meeting with Mr. Mink on May 12, 1995, was the last confirmed communication between Attorney Crawford and his client.

---

[1]  Mr. Mink was awaiting a preliminary hearing on an unrelated matter.

3

Between May 12, 1995, and September 7, 1995, Attorney Crawford sent three letters to Mr. Mink at Virgie Mink's address as Mr. Mink directed. None of these letters was sent by certified mail and none was returned to Attorney Crawford before the trial, which would indicate that they were not received. The second letter, dated August 8, 1995, reconfirmed the trial date and requested that Mr. Mink contact Attorney Crawford in order to prepare for trial. Mr. Mink never contacted Attorney Crawford.

The third and final letter from Attorney Crawford to Mr. Mink was forwarded on September 7, 1995, four days before trial. In that letter, Attorney Crawford explained the importance of Mr. Mink's cooperation in preparing for trial, and that if he failed to cooperate in defending his case, Auto Owners may not be required to provide coverage for him. The letter again requested that Mr. Mink contact Attorney Crawford in order to prepare for trial. This letter was returned to Attorney Crawford's office but not until after the Circuit Court action.

During these final days before trial, Attorney Crawford attempted but was unable to contact Mr. Mink by phone. Attorney Crawford and his staff spoke with Mr. Mink's mother, ex-wife, brother, and former employer in an attempt to contact the insured. Auto Owners and Attorney Crawford again retained a private investigator to locate Mr. Mink but the search for Mr. Mink this time was unsuccessful.

Jeff Tank was the Auto Owners adjuster in charge of Mr. Mink's claim. On September 7, 1995, Mr. Tank and Attorney Crawford, considering the possibility that Mr. Mink would not

4

appear for the trial, discussed Tennessee case law relative to an insurer's ability to deny coverage based on the insured's failure to cooperate in the defense of his case.  Those discussions culminated with Attorney Crawford forwarding two cases to Mr. Tank on September 8, 1995, that supported the proposition of an insurer's right to deny coverage for lack of cooperation by the insured.

The following Monday, September 11, 1995, Mr. Mink did not appear for the trial.  Attorney Crawford moved for a continuance, which motion was joined by Allstate, but the motion was denied.  Attorney Crawford defended Mr. Mink, in his absence, by use of deposition testimony previously provided by Mr. Mink. The jury returned a verdict of $18,500 against Mr. Mink and found no liability on the part of the phantom driver.

Prior to the trial, Auto Owners did not notify Mr. Mink, either verbally or in writing, that Auto Owners was reserving its rights under the policy of insurance covering Mr. Mink.  By letter of October 3, 1995, Auto Owners advised Mr. Mink for the first time that it was denying coverage based on Mr. Mink's unexplained absence at the trial.

Auto Owners did not pay the judgment entered against Mr. Mink, and Allstate paid to its insured, Mrs. Smith, the sum of $21,011.47, based on the judgment she received in the Circuit Court action, and based on her property damage and medical expense claims.  Allstate sought recovery of these payments, plus all applicable interests and costs, by action in Knox County Chancery Court.  Following trial based on a stipulation of facts

5

presented to the Court January 28, 1997, Allstate's suit was dismissed by order of April 30, 1997, based on acceptance of Auto Owners' policy coverage exclusion defense of non-cooperation of the insured. Thereupon, Allstate timely filed its notice of appeal to this Court on April 30, 1997.

The following issues, which we restate, are presented by Allstate:

I.  Whether Auto Owners' unconditional defense of Ron Mink constituted a waiver of its right under the policy to deny coverage for lack of cooperation.

II.  Whether Auto Owners exercised good faith and due diligence to obtain the cooperation of Ron Mink.

III.  Whether Auto Owners proved that Ron Mink's failure to appear at trial seriously interfered with Auto Owners defense of the action.

Allstate first asserts that the Chancery Court erred in dismissing its claim because Auto Owners' unconditional defense of Mr. Mink waived any right Auto Owners had to deny coverage for lack of cooperation.

Our courts have universally upheld insurance provisions that require the insured to cooperate in the preparation and defense of the insured's claim. In *Linehan v. Allstate Ins. Co.*, an unreported opinion of this Court, filed in Nashville on May 4, 1994, we said: "Tennessee courts view these clauses as conditions precedent and, in the absence of waiver or estoppel, hold that a breach of the clause substantially affecting the

6

insurer's interests constitutes a complete defense to liability under the policy." *Linehan*, (*citing Pennsylvania, etc., Inc. Co. v. Horner*, 198 Tenn. 445, 450-51, 281 S.W.2d 44, 46 (1955); *Hartford Accident & Indemnity Co. v. Partridge*, 183 Tenn. 310, 314-15, 192 S.W.2d 701, 702-03 [1946]). However, it is also the rule that an insurance company cannot deny coverage under such clauses, after it has conducted a defense for its insured, without first reserving its rights through some form of notice. See *American Home Assur. Co. v. Ozburn-Hessey Storage Co.*, 817 S.W.2d 672 (Tenn.1991), which quotes from *Maryland Casualty Co. v. Gordon*, which in turn quotes from American Jurisprudence 2d:

> "The general rule supported by the great weight of authority is that if a liability insuror, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insuror's unconditional defense of an action brought against its insured, constitutes a waiver of the terms of the policy and an estoppel of the insured to assert such grounds."

*American*, at 675.

Allstate asserts that because Auto Owners did not reserve its rights before it conducted Mr. Mink's defense, in the Circuit Court action, it is estoped from relying on the policy's non-cooperation provision. However, the general rule as expressed above assumes that the insurer had knowledge of non-cooperation and time thereafter to reserve its rights. The facts in this case do not support that Auto Owners was aware of Mr. Mink's non-cooperation with sufficient time to give notice of its reservation of rights.

7

As stated earlier, Mr. Mink cooperated in the trial preparations and told Attorney Crawford, when they met in May 1995, that he would attend the trial. Although the troubles Attorney Crawford had in the past locating Mr. Mink may have provided some forewarning that Mr. Mink would not appear at trial, it was not until a few days before the trial that Auto Owners had knowledge that Mr. Mink's appearance at trial was in real doubt. At this point Attorney Crawford and Auto Owners tried to contact Mr. Mink themselves and even attempted to locate him with an investigator, but were unsuccessful. Auto Owners and Attorney Crawford were not even sure on the day of the trial whether Mr. Mink would show or not. Thus, the Chancery Court was correct in basing its decision on the

> . . . more logical rule that the insurer need not withdraw in order to preserve its defense of non-cooperation where the insured does not appear at trial. Any other rule would require the insurer to elect at its peril whether to proceed or withdraw, allowing it no recourse should it elect to withdraw and at a later determination be made that there was no lack of cooperation.

*Firemen's Ins. Co. v. Cadillac Ins. Co.,* 679 S.W.2d 821, 823 (Ark.Ct.App.1984).

Auto Owners did not have knowledge of Mr. Mink's non-cooperation until the day of the trial precluding the giving of any notice reserving rights. Therefore, we concur in the Chancery Court's holding that Auto Owners' unconditional defense of Mr. Mink did not constitute a waiver of its right under the policy to deny coverage for lack of cooperation.

Allstate's second assertion is that Auto Owners did not exercise good faith and due diligence to obtain the appearance of Mr. Mink at his trial. Just four months prior to the trial date, Attorney Crawford obtained an in-person promise from Mr. Mink that he would attend the trial. Three letters, in those four months, reminding Mr. Mink of the trial date were sent by Attorney Crawford's office to the mailing address where Mr. Mink said he could be contacted. Several days before the trial date Attorney Crawford's office attempted to contact Mr. Mink by phone at several different locations and even hired an investigator to track him down. We find that Auto Owners acted in good faith and with due diligence in attempting to obtain the cooperation of its insured.

Allstate's final contention is that Auto Owners is precluded from relying on the non-cooperation provision because Auto Owners has not proven that Mr. Mink's failure to appear at trial seriously interfered with Auto Owners defense of the action. This issue was not addressed by the Chancery Court's memorandum opinion.

In order for an insurer to use a non-cooperation defense "the insured's lack of cooperation must be substantial and material to result in a breach of a policy condition." *Thaxton v. Allstate Ins. Co.,* an unpublished opinion of this Court, filed in Nashville on March 18, 1988. *Thaxton* involved the question of whether an insured's failure to provide his income tax returns to his insurer after a fire loss constituted a breach of the cooperation clause of the insurance policy. Auto Owners argues that because *Thaxton* does not involve an insured's

9

attendance at trial it does not control the case at hand.  We find no logical reason that prejudice need not be shown when an insured does not attend trial but must be shown if the non-cooperation occurs before trial.

Regardless of when the non-cooperation occurs "placing the burden on the insurer to show substantial prejudice is the best rule to adopt." *Thaxton*.  This rule does not place an undue burden on the insurer.  "It is simply necessary for the insurer to show that the noncooperation would more likely than not seriously interfere with the insurer's investigation of the claim or defense of the action." *Thaxton*.  Allowing an insurer to deny coverage for non-cooperation when the non-cooperation does not interfere with the defense of the action allows the insurer to have its cake and eat it too.  Just as forcing the insurer to withdraw in order to preserve its defense of non-cooperation where the insured does not appear at trial is illogical, so is allowing the insurer to deny coverage where it cannot show any prejudice in defending its action.

The question we face with the case at hand is whether an insured's absence at trial is prejudicial to his defense.  Logic and common sense normally dictate that an insured's absence would be prejudicial.  See *Firemen's*.  In *Firemen's* the Court looked at evidence such as the amount of the award and the attorney's testimony regarding his difficulty trying the case and the effect the absence had on the jury to establish substantial prejudice.  See *Firemen's*.

In reviewing the evidence in the present case we find no showing of substantial prejudice. First, the jury awarded $18,500 against Mr. Mink in the Circuit Court action which was substantially less than the $25,000 settlement authority given to Attorney Crawford by Auto Owners and only slightly higher than the $15,000 Auto Owners offered to settle before the trial.

Second, no evidence appears in the record suggesting any substantial difficulty in defending the case or negative effect on the jury. In fact, prior to trial, Jeff Tank, Auto Owners' adjuster, felt that Mr. Mink's absence would be a benefit. On September 7, 1995, in his adjuster's log, Mr. Tank wrote:

> Insured has skipped town again . . . offered $15,000 to settle and close. Even if we located the insured, he would be a detriment to our case. We still need to show good faith and try to locate our insured again before trial."

Mr. Tank also testified that he believed Mr. Mink would not make a credible witness. On September 8, 1995, Mr. Tank and Attorney Crawford even had a conversation regarding using the insured's absence as a way of not paying a judgment. Therefore, in a sense it could be said that Mr. Mink actually cooperated with Auto Owners by not attending the trial. Attorney Crawford was allowed to use Mr. Mink's deposition testimony without the use of a witness which the insurer itself believed would hurt its case.

It would appear that Auto Owners is engaging in duplicity. We say this because before trial its representatives felt that Mr. Mink's appearance would be detrimental to Auto

11

Owners' defense, but after trial denied coverage claiming Mr. Mink's absence prejudiced its defense. In light of pre-trial comments by Auto Owners' representatives, as well as the amount of the judgment in relation to the settlement authority, we find that Mr. Mink's absence did not prejudice the defense of the action.

For the reasons stated above, the judgment of the Chancery Court is reversed and the cause remanded for entry of an appropriate judgment in favor of Allstate and collection of costs below, which are, as are costs of appeal, adjudged against Auto Owners.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
William H. Inman, Sr.J.